## 11242

### CARRISON *ET AL.* v. YOUNG *ET AL.*

#### (118 S. E., 32)

1. OFFICERS—PETITION ALLEGING WRONGFUL WITHHOLDING OF COUNTY
RECORDS HELD PRIMA FACIE TO WARRANT RELIEF.—A petition by
persons comprising the board of directors of Kershaw County, appointed and qualified pursuant to act approved February 14, 1923,
entitled "An Act to provide a system of county government for
Kershaw County," alleging the wrongful withholding of county
records by the previous board of county commissioners, *held* to
*prima facie* entitle petitioners to relief under Code Civ. Proc.,
1912, § 472, relating to proceeding to enforce surrender of such
records unlawfully retained.

2. OFFICERS—SURRENDER OF COUNTY RECORDS TO SUCCESSOR IN OFFICE
WILL NOT PRECLUDE ACTION TO TRY TITLE TO OFFICE.—A surrender
of county records by county commissioners to their successors, a
board of directors, upon demand, would not preclude a subsequent
action to contest such successors' title to office.

In the original jurisdiction.

Proceedings by H. G. Carrison and others, as the Board
of Directors of Kershaw County, and T. P. Brown and
others, constituting the Board of Arbitration for Kershaw
County, against J. V. Young and others to enforce surrender of county records alleged to be wrongfully withheld.
Relief granted.

The following is the petition, the order to show cause,
and the return made:

#### PETITION

To the Honorable Eugene B. Gary, Chief Justice, State
Supreme Court:

The above-named petitioners respectfully show:

That under and by virtue of the provisions of an Act
entitled "An Act providing a system of County Government for Kershaw County," approved the 14th day of
February, A. D. 1923, the petitioners, H. G. Carrison, Sr.,
A. B. McLaurin, R. C. Jones, and R. T. Mickle, were heretofore duly appointed, commissioned, and qualified as mem-

bers constituting the Board of Directors for Kershaw County, and the above-named petitioners, T. P. Brown, J. H. Barfield, and A. E. Kennedy, were heretofore duly appointed, commissioned, and qualified as members of the Arbitration Board for Kershaw County.

That the aforesaid petitioners constituting the Board of Directors for Kershaw County, heretofore met and duly organized by electing H. G. Carrison, Sr., chairman of the said Board, and L. T. Mills, Esq., as Clerk of the Board, and in co-operation with the aforesaid petitioners constituting the Arbitration Board for Kershaw County, elected D. T. Yarborough, road superintendent for said county as provided by the before mentioned Act.

That heretofore and prior to the qualification by the above-mentioned petitioners, H. G. Carrison, Sr., A. B. McLaurin, R. C. Jones, and R. T. Mickle, as members constituting the Board of Directors for Kershaw County, the above-named respondents were acting and serving as Commissioners for Kershaw County, constituting the Board of County Commissioners for Kershaw County, under and by virtue of the provisions of an Act entitled "An Act to abolish the office of County Supervisor of the County of Kershaw and to provide a system for County Government for the said County," as approved on the 11th day of March, A. D. 1920, as amended by an Act entitled "An Act to amend Section Two of an Act entitled 'An Act to abolish the office of County Supervisor in the County of Kershaw, and to provide a system of County Government for said County,'" approved the 28th day of February, A. D. 1921, and were occupying and using an office in the Court House, in Kershaw County, and were in control and possession of all the books, papers, minutes, records and documents relating to county government of the said County, and the above-named respondent, J. V. Young, was acting and serving as chairman of the said Board of County Commissioners.

That subject to the qualification and organization by the petitioners herein as the Board of Directors for Kershaw County, said petitioners above-named constituting the Board of Directors for Kershaw County, on the 6th day of March, A. D. 1923, addressed to J. V. Young, chairman of the former Board of Commissioners for Kershaw County, and such of the other members as were then with him and occupying the office in the Court House at Camden, S. C., which they had formerly used in connection with the county government, a communication inquiring whether, as currently reported, they would decline to give possession of the said office to the petitioners and would contest their right to take charge of the governmental affairs of Kershaw County, as provided in the Act under which the petitioners had qualified.

The aforesaid inquiry made by the petitioners constituting the Board of Directors, the respondents, J. V. Young, J. L. Hinson, S. H. Mickle, and C. A. Johnson, on the said 6th day of March, 1923, signing themselves as Board of Commissioners for Kershaw County, made response, among other things, as follows:

"At this time, however, we must decline to yield to you possession of the office or any of the books and papers thereto belonging. * * * We would be glad to submit, within ten days from this date, a proposition which we trust may result in an amicable adjustment of the whole matter."

That further, on March 16, 1923, the aforesaid respondent, J. V. Young, signing himself as Chairman, S. H. Mickle, J. L. Hinson, and C. A. Johnson, by J. V. Young, addressed the petitioners above-named, constituting the Board of Directors for Kershaw County, a communication in which they say, among other things: "With regard to the surrender to you of the office of County Commissioners for Kershaw County, which we now hold, we beg to say that after a very careful consideration of our rights, we feel that we must decline to yield to your demand."

That again on the third day of April, 1923, the petitioners being in session as the Board of Directors for Kershaw County, made demand through their Chairman, H. G. Carrison, Sr., upon J. V. Young, Esq., assuming to act as Chairman, and others of the respondents assembled with him, for possession of the office and all books, papers, and documents relating to the government of Kershaw County, which the respondents still retain, and the said respondents again declined to surrender same.

Wherefore, petitioners pray that an order be granted requiring the respondents to show cause why they should not be required to surrender to the petitioners above-named, the said office, books, and papers, and documents in their possession relating to the government of Kershaw County and pertaining to the administration of the office held by the petitioners as the Board of Directors.

W. B. DE LOACH,
THOS. J. KIRKLAND,
Attorneys for Petitioners.


ORDER

Upon hearing the petition of the above-entitled petitioners, it is upon motion of Messrs. W. B. De Loach and Thos. J. Kirkland, attorneys for petitioners, ordered:

That the respondents above-named do show cause. before the Supreme Court in Columbia, S. C., at 10 o'clock a. m., Monday, May 14th, next ensuing, why they should not be required to deliver to petitioners any and all books, papers and documents in their possession relating to the governmental affairs of Kershaw County.

It is further ordered that a copy of this order and of the said petition be served upon the respondents above-named and the said respondents are hereby required to serve upon the attorneys for petitioners a copy of their return

or response, within 20 days after service upon them of this order and petition, exclusive of the day of such service.

EUGENE B. GARY,
Chief Justice.

RETURN

To the Honorable the Supreme Court of the State of South Carolina:

As and for a return to the rule to show cause issued in the above-stated cause by the Hon. Eugene B. Gary, Chief Justice, on the 5th day of April, 1923, the respondents would respectfully show unto the Court:

First. That they specifically deny every allegation set out in the petition except as the same may be hereinafter expressly admitted.

Second. They admit that heretofore they were acting and serving as Commissioners for Kershaw County, constituting the Board of County Commissioners for Kershaw County, under and by virtue of the provisions of an Act entitled "An Act to abolish the office of County Supervisor of the County of Kershaw and to provide a system for county government for the said County," as approved on the 11th day of March, A. D. 1920, as amended by an Act entitled "An Act to amend Section Two of an Act entitled 'An Act to abolish the office of County Supervisor in the County of Kershaw, and to provide a system of county government for said County,'" approved the 28th day of February, A. D. 1921, and were occupying and using an office in the Court House in Kershaw County and were in control and possession of all books, papers, minutes, records and documents relating to the county government of the said County, and the above-named respondent, J. V. Young, was acting and serving as Chairman of the said Board of County Commissioners. They further allege in this connection, that under the provisions of the said Acts they were duly appointed, qualified, and commissioned as officers constituting the said Board of County

Commissioners for Kershaw County, and are now in legal right entitled to hold, exercise, and enjoy the said office thereunder, and to the control and possession of the books, papers, minutes, records and documents relating to the county government of the said County.

Third.     They admit that the petitioners signing and styling themselves as, and purporting to be, members constituting the alleged Board of Directors under an alleged Act of the General Assembly of the State of South Carolina, entitled "An Act providing a system of County government for Kershaw County, approved the 14th day of February, 1923, addressed to J. V. Young, Chairman of the Board of County Commissioners for Kershaw County, a communication similar in purport and tenor to that referred to in the petition; that the respondents replied in part as set forth in said petition; that on or about the third day of April, 1923, the petitioners purporting to be members of the alleged Board of Directors under said alleged Act, made demand on the respondents for the possession of the office, books, papers, and records relating to the county government of said Kershaw County; and that respondents declined to surrender the same upon the ground that they were legally entitled to hold, enjoy, and exercise the said office, and to retain in their possession all books, papers and records relating thereto.

As and for a further return to the said rule, the respondents allege, upon information and belief, that the said Act under which the petitioners claim to be duly appointed, qualified, and commissioned members of the alleged Board of Directors and Arbitration Board therein referred to, is unconstitutional, wholly contrary to a sound public policy, and null and void in the following particulars:

First.   The said Act provides for the automatic expiration of the office of County Commissioner only upon the qualification of one component part of the alleged governing board which it attempts to create, and with which it attempts

to vest all rights and powers relating to the management of the financial affairs of said County.

Second. The said Act purports on its face to have the alleged arbitrators appointed from the townships of the County, and makes no provision whatever for the representation of the fourth township in the County, the existence of which the Court will judicially notice; such provision operating as an unjust, unlawful, and arbitrary discrimination against the citizens and taxpayers of said township.

Third. The said Act does not provide that the alleged arbitrators shall take the constitutional oath of all public officers, that is to say, those who perform a public service in consideration of which .they receive a compensation from the public funds, but, on the contrary, demands and prescribes an oath not in keeping with the purpose of the constitutional oath or promotive of its objects.

Fourth. The said Act does not provide sufficient security for the faithful discharge of the duties devolved upon the ·alleged Board of Arbitration in violation of Article 10, Section 12, of the Constitution of South Carolina, 1895.

Fifth. The said Act does not make any provision whatever for the removal of any member of the Board of Directors for sufficient cause, and provides for the removal of the Board of Arbitration in a manner which is wholly unlawful and arbitrary.

Sixth. That the plan provided in said Act of submitting to a governing board of component boards, with such differences in their constitution, organization, and qualifications, both of said Boards being vested, practically and substantially with the same rights and powers, is so contrary to a sound public policy that the same should not be sustained and upheld by this honorable Court.

As and for a further return the respondents allege, upon information and belief, that the said Act does not in legal effect so modify, alter, or change the duties, rights, and

powers of the respondents, as constituting the Board of County Commissioners of said Kershaw County, as to abolish, in legal effect, the office under which the respondents now hold, and that they cannot be removed therefrom in the manner sought in the alleged Act under which the petitioners hold, or in this proceeding.

As and for a further return to the said rule, the respondents allege, upon information and belief, that the right and title of the respondents in and to the office in question cannot be determined under this proceeding, which cannot be maintained upon the following grounds:

First. That the petition fails to allege that this proceeding was brought by the Attorney General of the State in the name of the State, upon his own information; or upon the complaint of any private party, or by a private party interested, on leave granted by a Circuit Judge against the offending parties.

Second. That the petition fails to allege that any judgment has ever been obtained in favor of the petitioners against the respondents, in which the latter were proceeded against as defendants in an action for their removal from office.

Third. That the Supreme Court of the State is without original jurisdiction, under the Constitution of the State, to determine the right or title to the office in question under the issues involved in this case and the form of proceeding adopted.

Fourth. That the jurisdiction of the Supreme Court in proceedings of this character is exclusively appellate.

Wherefore, respondents pray that the rule herein be discharged, and for such other and further relief as may be just and proper.

E. D. BLAKENEY,<br>
MENDEL L. SMITH,<br>
Attorneys for Respondents.

Act February 14, 1923, referred to, is as follows:
An Act to Provide a System of County Government for

Kershaw County.

Section 1.   Be it enacted by the General Assembly of the State of South Carolina:   That the office of County Commissioner in and for Kershaw County be, and the same is hereby, abolished.   The term of the present Commissioners shall automatically expire as soon as the Board of Directors hereinafter provided for shall qualify.

Section 2.   That a Board of County Directors for Kershaw County to consist of four (4) members, one from each township, is hereby created.   The members of said Board shall be appointed by the Governor upon the recommendation of the Legislative Delegation or a majority thereof, to serve until January 1, 1925, and until their successors are elected or appointed and qualify.   In the General Election of 1924 and every succeeding two years thereafter each township shall elect one Director who shall be commissioned as all other county officials are, the candidate in such General Election to be chosen at the preceding primary election.

Section 3.   That said Board of County Directors shall elect from their number a Chairman, upon whom may be devolved such duties and powers as the Board in its discretion may deem advisable.   That the Chairman of said Board shall receive as compensation for his services the sum of four hundred ($400.00) dollars per annum and that each of the other members shall receive two hundred ($200.00) dollars per annum payable quarterly.   That each member of the Board shall enter into a bond secured by a duly licensed security company to be approved by the Clerk of the Court, payable to the County in the sum of two thousand ($2,000.00) dollars, conditioned for the faithful performance of his duty.   The premium of said bond to be paid out of the general funds of the County Clerk.

The Board of Directors shall elect a clerk to be known as the Clerk of the Board of County Directors. He shall hold office at the will and pleasure of the Board and shall receive such annual salary as the Board of Directors may fix, payable monthly on warrants drawn by the Board of Directors. All warrants of the Board of Directors upon the County Treasurer shall be signed by not less than three members of the Board of Directors and also by the Clerk of the Board.

Section 4. The County Board of Directors shall have all the power, authority and jurisdiction now vested in the County Commissioners of said County, under and by the laws of this State not inconsistent with the provisions of this Act.

Section 5. The Board shall meet on Tuesday after the first Monday in each month. Special meetings may be called by the Chairman. All meetings to be held in the Directors office at the Court House. A majority vote of said Directors on all matters (except on matters hereinafter provided for) shall be binding and final, provided the minority does not appeal to the Arbitration Board hereinafter provided for, in such event or when there is a tie vote the Arbitration Board shall be notified by the Clerk of the Board to meet the Board of Directors on a certain date. When such meeting takes place a majority of the Board of Directors and Arbitration Board combined shall render the binding and final decision, subject only to the right of appeal to the circuit in cases where such right now exists by law.

Section 6. The Arbitration Board shall consist of three members to be appointed by the Governor upon the recommendation of the members of the General Assembly for Kershaw County, or a majority thereof. One member shall be appointed from DeKalb Township to serve a term of four (4) years, from date of commission and until suc-

cessor qualifies, the other members two (2) to be appointed from different townships to serve a term of two years from date of commission and until successor qualifies. Upon receiving their commission they shall file oath with the Clerk of Court that their decisions will be in behalf of the County's interest according to their information and belief. It shall be the duty of the Arbitration Board to meet with the Board of Directors when notified to meet and after acquainting themselves with the question to be voted on, vote for what they think to be for the best interest of the County. Compensation for such service shall be mileage one way at the rate of ten (10) cents per mile traveled, five ($5.00) dollars per day for each day's service, payable quarterly from the road fund. When the legislative delegation or a majority thereof is convinced that any member of said Board is not working for the County's best interest said delegation may ask the Governor to remove him and recommend his successor who shall fill out his unexpired term.

Section 7. The office of Road Superintendent is hereby created. The Board of Directors with the Arbitration Board shall elect a suitable eligible man to be road superintendent to serve until January 1, 1925, and until his successor is qualified. In the general election of 1924 and every succeeding two years, he shall be elected and commissioned as all other county officers, for a term of two years. Candidates in the general election to be chosen at the preceding primary. Compensation for such services as he shall be required to render shall be at the rate of one hundred twenty-five ($125.00) dollars per month, the County to furnish a car and bear all expenses attached thereto, salary and expense to be paid out of the road fund. He shall be charged with carrying out the instructions of the Board of Directors in directing the work of all county forces in such localities as the Board may designate. He shall make

a monthly report of the number of miles worked, scraped, or repaired in each township. He shall be present at all monthly meetings of the Board, to give conditions of the roads in different sections of the County and to receive instructions for the next month's work. He shall purchase supplies for the different forces of the County as the Board may direct or the Board may empower him to purchase what is necessary at the lowest possible cost. When he neglects his duty or fails in ability to carry out the instructions of the Board of Directors and they feel that he shall be removed they shall call in the Arbitration Board and if five out of the seven votes of both Boards combined are in favor of removal, the Governor shall remove him and a majority vote of both Boards combined shall recommend to the Governor his successor and the Governor shall commission the one recommended by such Boards to fill out the unexpired term.

Section 8. The Board of Directors may employ a civil engineer when his service is needed on any particular piece of work. The Board of Directors may agree on the price to be paid and term of such service, such service to be paid out of the road fund.

Section 9. That the said County Board of Directors are hereby authorized and empowered to borrow money from year to year to pay the current expenses, including ordinary expense and expense of road and bridge building, and to pledge the taxes of the County to secure same, and the said County Board of Directors is hereby authorized to borrow money from the County or State Sinking Fund and said Sinking Fund Commissioners are hereby authorized to make such loans, and the County Board of Directors are hereby authorized to use any County fund appropriated for other purposes and unexpended in the improvement of roads and bridges of the County, provided, that no amount shall be borrowed for any purposes in excess of the amount

appropriated by the General Assembly for such purpose, not in excess of the tax levied to meet such expense.

Section 10. Before the Board of Directors proceed to open any new roads, they shall call in the Arbitration Board to vote with them on the opening of such certain road and a majority of both Boards combined shall prevail.

Section 11. All Acts or parts of Acts inconsistent with this Act are hereby repealed.

Section 12. This Act shall go into effect immediately upon its approval by the Governor.

In the Senate-House the 13th day of February, in the year of our Lord one thousand nine hundred and twenty-three.

E. B. JACKSON,
President of the Senate.
T. S. McMILLAN,
Speaker of the House of Representatives.
Approved the 14th day of February, 1923.
THOS. G. McLEOD,
Governor.

*Messrs. W. B. De Loach* and *Thos. J. Kirkland,* for petitioners, cite: *Power of Legislature over public offices and officers:* 92 S. C., 455; 103 S. C., 10; 103 S. C., 87; 19 S. C., 114; 2 S. C., 81; 82 S. C., 22. *Proceeding brought under Section* 472, Code Procedure, 1912, Art. V, Section 4, Const. 1895; 30 A. & E. Enc. L., 1302; 60 S. C., 572; 94 S. C., 207; 32 S. C., 5.

*Messrs. E. D. Blakeney* and *Mendel L. Smith,* for respondents, cite: *Action under Code Procedure* 1912, Sec. 466, *and cannot be maintained under Section* 472.

May 31, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

In order to understand clearly the issues involved, it will be necessary to report the petition, the order requiring the respondents to show cause, the return made by the respondents to the rule, and the Act, entitled "An Act to provide a system of county government for Kershaw County," approved the 14th day of February, 1923.

Our construction of the petition is that the sole relief which it seeks is, under Section 472 of the Code, which contains these provisions:

"If the defendant shall refuse or neglect to deliver over such books or papers, pursuant to the demand, he shall be guilty of a misdemeanor, and the following proceedings shall be had, to compel delivery of such books or papers:

"(1) Whenever any person shall be removed from office, or the term for which he shall have been elected or appointed shall expire he shall on demand deliver over to his successor all books and papers in his custody as such officer. or in any way appertaining to his office. Every person violating this provision shall be deemed guilty of a misdemeanor.

"(2) If any person shall refuse or neglect to deliver over to his successor any books or papers, as required in the preceding section, such successor may make complaint thereof to any Judge of the Circuit Court, or Justice of the Supreme Court, where the person so refusing shall reside; and if such officer be satisfied by the oath of the complainant, and such testimony as shall be offered, that any such books or papers are withheld, he shall grant an order directing the person so refusing to show cause before him, within some short reasonable time, why he should not be compelled to deliver the same."

It appears *prima facie* from the pleadings that the petitioners are entitled to relief under Section 472 of the Code.

This conclusion is fully sustained by *Ex Parte Whipper,*

32 S. C., 5; 10 S. E., 579, in which the Court used the following language:

"The Code, in certain cases stated, provides the means of obtaining possession of the records of an office, which are of a very summary character, and, in a matter so important, obviously intended to prevent all unnecessary delay. * * *

"It is not denied that the proceedings in this case were in precise conformity to these provisions, but the point is made that they were not applicable until after formal judgment in an action to test title to the office. It is true that the provisions cited appear in Part II, Title 13, Chapter 2, of the Code, which abolished the writ of *quo warranto,* and substituted therefor a civil action; but it is certainly not expressly declared that they were only applicable after judgment in such action, with all the necessary delays incident thereto. We think that the above provisions of the Code as to getting possesion of official records, must be construed in conection with the Acts creating the machinery for declaring elections in the General Statutes hereinbefore referred to, which, in authorizing the election to be declared, and a commission to be issued, confer at least *prima facie* title to the offices and that is sufficient to authorize an application for possession of the records pertaining to the office. * * *

"This is, as it seems to us, conclusive. The authority created for that purpose had declared Talbird duly elected. Right or wrong, he had been commissioned, qualified, and entered upon the discharge of his duties as Probate Judge. His *prima facie* title was clear, and, in the language of Judge Strong in the case of Baker, the remedy of the petitioner (Whipper) was to surrender the books and papers of the office, and, if so advised, to resort to his civil action in the nature of a *quo warranto* to test the title. The records of a public office are in no sense private property.

They are very important to every citizen. It is good policy to require that there should be no unreasonable delays in determining contests as to elective offices. Upon that subject especially it concerns the interest of the country that there should be an end of litigation."

This language is quoted with approval in *Verner v. Seibels,* 60 S. C., 572; 39 S. E., 274. In that case it is stated that the same reasoning is applicable to an *appointive* office.

· When the demand was made by the petitioners as stated in the petition, there should have been a compliance therewith by the respondents. This would not have precluded them from bringing an action thereafter to determine the title to the office.

It is, therefore, ordered that the respondents do forthwith comply with the demand of the petitioners.