14183

HEYWARD v. LONG (AND THREE OTHER CASES)

(183 S. E., 145)

*Messrs. W. H. Muller, A. H. Dagnall, Sims & Sims, Carl Kearse, Osborne & Butler, Robinson & Robinson* and *Nathans & Sinkler,* for plaintiffs,

*Messrs. Evans, Galbraith & Holcombe, John P. Grace, M. L. McCrae, C. S. Bowen, R. B. Hildebrand* and *W. M. Smoak,* for defendants.

December 5, 1935.

*Per curiam.*

The four above-entitled proceedings were instituted in the original jurisdiction of the Supreme Court, in equity, against the respondents, upon a petition or complaint in each case. The allegations contained in the petitions in the four cases are practically identical, with the exception of necessary changes in names and dates.

It is alleged in the four petitions that the plaintiffs are in the possession of their respective offices as State Highway Commissioners of South Carolina, and that the purpose of instituting these proceedings is to enjoin and restrain the respondents who are rival claimants to said offices from interfering with them in such possession and in the performance of their official duties, until such time as the respondents have established their rights to the offices in question, in a proceeding instituted on the law side of the Court.

The gist of each proceeding may be found in the second paragraph of the complaint in the first case mentioned in the caption. The other petitions contain substantially the same averments with respect to the respondents from the Second, the Tenth, and the Fourteenth Judicial Circuits. The paragraph referred to is as follows: "That the defendant, J. C. Long, claims some right, title or interest in and to the said office of highway commissioner from the Ninth Judicial

Circuit, and has been and is threatening to continue interfering with the plaintiff in the performance of his duties as such commissioner and threatening to take possession of his said office. That at a meeting of the Commission on the 9th day of October, 1935, the said defendant appeared and demanded possession of the said office, claimed and demanded the right to vote on questions coming before the Commission, and gave notice that he would appear at any subsequent meetings and continue to demand such right. That such conduct on the part of the defendant interferes seriously with the performance of his duties by the plaintiff, and is a source of untold embarrassment and confusion, not only to the plaintiff, but to the whole Commission."

The complaint in each case alleges further, that unless the petitioners are protected in their right to these offices, the possession of which they now have, and the duties of which they are now performing, irreparable damage will result, not only to them, but to the Commission as a whole, and to the people of the State of South Carolina.

Upon the several petitions, the Chief Justice issued rules to show cause, directed to each of the respondents, requiring them to show cause before the Supreme Court on the 11th day of November, 1935, why an order restraining and enjoining them from interfering with the petitioners in the performance of their duties as highway commissioners for the State of South Carolina from the Second, the Ninth, the Tenth, and the Fourteenth Judicial Circuits, and with the possession of their offices, should not be issued. At the same time a temporary injunction was granted, restraining the respondents from in any way interfering with the petitioners in the performance of their duties as Highway Commissioners, and from appearing at the meetings of the Commission, or doing any act or thing in connection with their alleged claim to said offices.

Upon the return day the respondents duly made returns, and the matter was heard by the Court at that time upon the

petitions and returns. The returns of the several respondents are substantially the same. They challenge the jurisdiction of the Court on the grounds: (a) That the procedings are civil actions, and should be commenced by the service of a summons to which they would have 20 days from the service to answer; (b) that the suits are for the purpose of trying title to the office in question, and they consequently cannot be maintained in equity; (c) that the petitioners have an adequate remedy at law; (d) that the state is not a party to the proceeding; (e) that the respondents are in possession of the offices, and that the petitioners are disqualified from holding public office because they are declared by the proclamation of the Governor to be rebels and in a state of insurrection.

The issues presented are identical, and are common with respect to all of the parties. The cases were heard and argued together before the Court, and one opinion will suffice for all.

It appears from the record that the petitioner E. T. Heyward was appointed as Highway Commissioner from the Ninth Judicial Circuit on January 31, 1933, for a 4-year term, his appointment having been confirmed by the Senate, and his commission bearing date February 1, 1933; that the petitioner R. J. Ramer was appointed as Highway Commissioner from the Tenth Judicial Circuit on September 21, 1932, for a 4-year term, his appointment having been duly confirmed by the Senate, and his commission bearing date September 26, 1932; that the petitioner W. Fred Lightsey was appointed as Highway Commissioner from the Fourteenth Judicial Circuit on September 1, 1932, for a 4-year term, his appointment having been duly confirmed by the Senate, and his commission bearing date September 28, 1932; and that the petitioner C. F. Rizer was appointed as Highway Commissioner from the Second Judicial Circuit on October 28, 1931, for a 4-year term, his appointment having been duly confirmed by the Senate, and his commission bearing date November 3, 1931.

It further appears from the record before us that from the dates of their respective appointments, above mentioned, they have been in the actual possession of their several offices, engaged in the performance of their official duties, and were in such possession and so engaged at the time of the commencement of this proceeding.

The respondents are rival claimants to these offices, and hold commissions from the present Governor of the State, appointing them to such offices. It is conceded that their appointments have not been confirmed by the Senate.

The respondent Frampton Toole alleges that he is entitled under his commission, which bears date October 9, 1935, to the possession of the office of Highway Commissioner from the Second Judicial Circuit; the respondent J. C. Long alleges that he is entitled under his commission, which bears date September 7, 1935, to the possession of the office of Highway Commissioner from the Ninth Judicial Circuit; the respondent Louis Richardson alleges that he is entitled under his commission, which bears date September 6, 1935, to the possession of the office of Highway Commissioner from the Tenth Judicial Circuit; and the respondent W. L. Rhodes alleges that he is entitled under his commission, which bears date September 7, 1935, to the possession of the office of Highway Commissioner from the Fourteenth Judicial Circuit.

The respondents not only assert their right to the possession of these offices, but they allege that before the restraining order of this Court was issued they attended a meeting of the State Highway Commission, demanded of the petitioners the possession of the offices in question, participated in said meeting, and gave notice to the petitioners that they would attend and participate in all other meetings and transaction of business matters of the Highway Commission.

I. The respondents contend that these are civil actions, which should be commenced by the service of summons.

Is a summons necessary?

It is of course true that ordinarily a civil action under the Code should be commenced only by the service of a summons. The contention of the petitioners, however, is that they are before the Court now in a proceeding, and not in an action. Construing Section 565, Vol. 1 of the Code 1932, the Court in the case of *Walpole v. Wall,* 153 S. C., 106, 149 S. E., 760, held that it had power to issue writs of mandamus in its original jurisdiction, and such proceedings were not actions requiring summons for their commencement; that the proper procedure was to file a petition, upon which the Court or Justice would issue a rule to show cause.

In *State v. Columbia Water Power Co.,* 82 S. C., 181, 63 S. E., 884, 22 L. R. A. (N. S.), 435, 129 Am. St. Rep., 876, 17 Ann. Cas., 343, the Attorney General filed a petition requiring the defendant to show cause why it should not be restrained. A rule to show cause was issued to which the defendant made return. This was a proceeding in the original jurisdiction of the Court, and was in accord with the procedure followed in *Walpole v. Wall, supra,* respecting writs of mandamus.

In the case of *Burnett v. Langston,* 164 S. C., 99, 162 S. E., 72, 73, which was likewise a proceeding in the original jurisdiction of the Supreme Court on a verified petition, a rule to show cause was issued requiring respondent to deliver to the petitioner all books, etc., in his possession relating to the office of tax collector of Spartanburg County. It was contended that this was an action which should have been commenced by a summons. The Court held: "As to the legal positions with reference to the jurisdiction of this court, there are numerous cases which show that these contentions are untenable. This court in its original jurisdiction may issue a rule to show cause without a summons, without the leave of a circuit judge, and upon a petition such as in this case," citing *Verner v. Seibels,* 60 S. C., 572, 39 S. E., 274; *Carrison v. Young,* 125 S. C., 42, 118 S. E., 32; *Walpole v. Wall, supra.*

Even if it were conceded that a summons is necessary, the rule to show cause, together with the petition or complaint, fully serves the purpose of a summons. This is settled by the case of *State ex rel., Wolfe v. Sanders,* 118 S. C., 498, 110 S. E., 808, 810. In disposing of the question, the Court uses this language: "The purpose of the summons is to acquire jurisdiction of the person of the defendant and to give him notice of the action and an opportunity to appear and defend. While Code Civ. Proc., § 178 *et seq.,* prescribes the requisites of the summons, it does not provide that it shall be in any particular form. And when we consider the purpose of the summons in the light of the proceedings, had in this case, particularly the provisions contained in the order of the Chief Justice and the allegations of the petition or complaint, and the prayer thereof, it is clear that the objection of defendant is purely and highly technical, and that to sustain it would be to sacrifice substance to form, because the order and the petition together contained substantially every requisite of a summons prescribed by the Code, and defendant was neither misled nor prejudiced in the slightest by the failure to serve him with a summons in due and regular form. While, as said, the service of a summons is the manner prescribed by the Code, and the usual means of acquiring jurisdiction of the person of the defendant, and therefore it ought to be obesrved in practice, as ought all other rules prescribed for an orderly system of procedure, nevertheless, it is well understood by the profession, and it has frequently been held by the Courts, that it is not the only method by which jurisdiction of the defendant may be acquired." See *Lyles v. Haskell,* 35 S. C., 391, 14 S. E., 829; *Clary v. Harvey,* 176 S. C., 512, 180 S. E., 673.

We hold that no summons was necessary in these proceedings.

With regard to the respondents' position that they have not been allowed 20 days from the service of the petitions or complaints, there is no rule of law in a

proceeding of this kind giving them such a period of time. The respondents made no contention at the hearing before us that they did not have sufficient time within which to prepare their returns. If such a contention had been made upon a sufficient showing, this Court would have acted upon it at that time. No request having been made for any extension of time, we deem the position now taken without merit.

II. Is the proceeding one to try title to an office such as would divest this Court of jurisdiction?

The respondents contend that this is an action at law in the nature of *quo warranto* to try title to these offices, and, if so, the Court is without jurisdiction to pass upon such a case. The contention that the case now before the Court is a civil action to try title to an office not only collides with cases from this Court holding to the contrary, but is in opposition to the general law on the subject.

In the case of *State v. Superior Court,* 17 Wash., 12, 48 P., 741, 742, 61 Am. St. Rep., 893, plaintiff and defendant were each candidates for membership on the city council of Everett, in a municipal election. The vote resulted in a tie, but by proceedings in the council, plaintiff was seated. He brought a suit to enjoin the defendant from interfering with him in the possession of his office. The Court held:

"The single question for determination here is the jurisdiction of the superior court in a suit in equity to protect a *de facto* officer in the possession of his office from intrusion or molestation by one claiming the office *de jure*. It is true, in the complaint made by the plaintiff in the superior court he sets forth such facts as would establish his superior right to the office, and claims such superior right. But the amendments which were made at the trial by direction of the court merely left the facts stated in the complaint as explanatory of his *de facto* right to possession of the office. It is maintained by the relators here that the title to the office of councilman was directly put in issue by the pleadings, and

that the superior court was thus divested of jurisdiction to hear the cause further. * * *

"Counsel for relators cite many authorities to support the proposition that a court of equity has no jurisdiction to interfere in election contests and election matters by injunction, and has no jurisdiction to interfere in municipal elections and political matters. The soundness of these general statements of the law cannot be questioned and the authorities cited fully sustain them. But High, Inj., § 1315, states what we conceive to be the generally accepted rule: 'While, as is thus shown, courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers *de facto* by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. * * * And the granting of an injunction in such case *in no manner determines the questions of title involved,* but merely goes to the protection of the present incumbents against the interference of claimants out of possession, and *whose title is not yet established.'* [Italics added.] The text of High is well supported. *Brady v. Sweetland,* 13 Kan., 41; *Braidy v. Theritt,* 17 Kan., 468; *Guillotte v. Poincy* [41 La. Ann., 333], 6 So., 507 [5 L. R. A., 403]; *Palmer v. Foley,* 45 How. Prac. [N. Y.], 110; Appeal of Town Council (Pa., Oct. 29, 1888), 15 A., 730; Beach, Inj., § 1380.

"*One in possession* of an office by virtue of a certificate of election issued by the proper officer, and regular upon its face, is entitled to retain possession and perform the duties of the office without interference until such certificate is set aside in some appropriate procedure. The clerk who issued the certificate to plaintiff appears to have been the proper officer to make the certificate for the councilman. The plaintiff was in the council with this certificate, and was thus *prima facie* a member of the council, having taken the oath of office,

and duly qualified to exercise its duties. *People v. Miller,* 16 Mich., 56; *Kerr v. Trego,* 47 Pa., 292; *People v. Head,* 25 Ill., 325; 2 Dill. Mun. Corp. (3d Ed.), § 892. See, also, *State v. Jones,* 19 Ind., 356 [81 Am. Dec., 403]; *Hamlin v. Kassafer,* 15 Or., 456, 15 P., 778 [3 Am. St. Rep., 176]."

Joyce on Injunctions, § 1380: "An injunction may be granted to protect the possession of officers *de facto* against the interference of claimants whose title is disputed, until the latter shall establish their title by the judicial proceeding provided by law. An injunction to prevent interference with the possession of a *de facto* officer lies at the instance of a member of a board where it appears that the adverse claimant may, otherwise than by concurrent action with the other members of the board, induct himself extra-judicially in part into office, and to some extent oust the incumbent." "But claims to an office under conflicting commissions will not be considered and passed upon in an injunction proceeding the sole object of which is to maintain the incumbent in possession provisionally until the pretensions of the adverse claimant who threatens to induct himself into office and thus oust the *de facto* officer without legal intervention, are judicially determined. And equity will not restrain the incumbent of an office from exercising its duties pending an action involving his title thereto."

The propriety and wisdom of allowing such suits by officers *de facto* on grounds of public policy is evident; it being said in 22 R. C. L., 590, § 311: "Since the welfare and good order of society require that those engaged in the discharge of public duties should not be disturbed by claimants whose right to discharge such functions is as yet uncertain, Courts of equity will protect from any unlawful intrusion those who are in office and who have entered at a time when they were recognized by all as being *de jure* officers." To the same effect see Mecham on Public Officers, § 994.

Also, in 46 C. J., 1059, § 376, we find the rule stated as follows: "The rule that an injunction will be granted on behalf of an incumbent to restrain a claimant from interfering with his exercise of the office until claimant has established his claim in a direct proceeding is applicable to *de facto* officers."

In the case of *Hardy v. Reamer, Mayor,* 84 S. C., 487, 66 S. E., 678, 679, in which case Hardy, as a police commissioner of the City of Columbia, brought a suit in equity to enjoin the mayor and city council from interfering with him in the possession and the performance of the duties of his office, the Supreme Court held:

"Equity cannot determine the question of title to a public office, but she can protect the possession of incumbents of a public office, and enjoin those who seek to interfere with, impede, and harass the incumbents in the proper enjoyment and discharge of their rights, privileges, and duties, as holders of such office. Clearly this is so where the incumbents were duly elected and claim under color of right. 2 High on Injunctions, § 1315; *Guillotte v. Poincy,* 41 La. Ann., 333, 6 So., 507, 5 L. R. A., 403; *Huntington v. Cast,* 149 Ind., 255, 48 N. E., 1025; *Stenglein v. Beach,* 128 Mich., 440, 87 N. W., 449; *State v. Superior Court,* 17 Wash., 12, 48 P., 741, 61 Am. St. Rep., 893.

"As clearly shown by these and many other authorities, the proper protection of the interests of the public requires that the incumbent of a public office be protected in the discharge of the duties thereof, and that any claimant to the office, or the duties thereof, cannot usurp the functions by force, but must proceed to establish his right by proper proceedings at law. The Code of Procedure of this State furnishes such claimant an adequate remedy. These considerations dispose of the demurrer interposed by defendants, and it is overruled."

The distinction between a case of this character and a case brought as a civil action to try title should be kept in

mind. The petitioners are in Court praying for injunction that the defendants be restrained and enjoined from interfering with them in the performance of their duties, and in the possession of their offices. We will show later in this opinion that the petitioners, if not *de jure*, are at least *de facto* officers, and, under the principles of equity herein announced, have an unquestioned right to enter that Court, praying its injunction to prevent and restrain the defendants from interfering with them in the discharge of their official duties, until the respondents have established their right to the possession of these offices in a proper legal action. This burden is on the respondents, and, as we shall show, the incumbent Commissioners, with the exception of Mr. Rizer, may.hold their respective offices until the expiration of their apparent term, or until the respondents, by a civil action to try title, judicially establish their own better legal right thereto. We hold that these proceedings are not actions to try title to office, and hence the State is not a necessary party thereto, and it follows that this Court is not divested of jurisdiction.

III. Are the petitioners *de facto* officers?

In considering this phase of the case, it is necessary that we go so far as to inquire into the precise official status of the petitioners with relation to the offices they now possess.

The general law is that one who holds over after the expiration of his legal term, where no provision is made by law for his holding over, is commonly regarded as a *de facto* officer. 46 C. J., 1058; *State v. McJunkin,* 7 S. C., 21; *Williams v. Boynton,* 147 N. Y., 426, 42 N. E., 184; *In re Lieutenant Governorship,* 54 Colo., 166, 175, 129 P., 811; *State v. Watkins,* 87 Conn., 594, 89 A., 178; *People v. Beach,* 77 Ill., 52; *In re Krickbaum's Contested Election,* 221 Pa., 521, 70 A., 852. This generally recognized principle will later in this opinion be applied to the particular facts of Mr. Rizer's case.

The question is most ably and interestingly discussed in *Ekern v. McGovern*, 154 Wis., 157, 142 N. W., 595, 612, 46 L. R. A. (N. S.), 819, where the Wisconsin Supreme Court, in a case very similar to the one before us, expresses the general rule as follows:

"Much might be said as to what is the precise nature of that special status, denominated *'de facto.'* A person may be a *de facto* officer, and have no real title at all to the place he assumes to have the right to. If one is in possession of an office, performing its duties and entered by right, or such claim of right as not to be classable as a usurper, or have been in undisturbed possession so long as to be equivalent to an entry under claim of right, and still claims in good faith to be entitled to the office, and all surroundings afford an appearance of *de jure* official status, he is, as a general rule, *de facto,* what he claims to be. What gives him that status is color of authority—color of title is not essential, strictly speaking. The latter term is often used, but its infirmity was exposed in the leading case of *State v. Carroll,* 38 Conn., 449, 9 Am. Rep., 409.

"This broad definition of what constitutes an officer *de facto,* formulated by Lord Holt in *Parker v. Kett,* 1 Ld. Raym., 652, 12 Mod., 467, and given special significance by Lord Ellenborough and the full King's bench in 1865, *Rex v. Bedford Level Corp.,* 6 East, 356 [2 Smith, 535], was demonstrated in *State v. Carroll,* to cover the subject under discussion, as it has ever since stood in England and, generally, in this country: 'One who has the reputation of being the officer he assumes to be although he is not such in point of law.' The Supreme Judicial Court of Massachusetts added the weight of its sanction thereof in *Petersilea v. Stone,* 119 Mass., 465, 20 Am. Rep., 335. The text-writers give like sanction, expressing the American view to be, that it is color of authority, not color of title, which distinguishes an officer *de facto* from a usurper. Throop on Public Officers, § 623; Mechem on Public Officers, § 317."

It is clear from the authorities cited that a *de facto* officer is one who is in possession of an office, in good faith, entered by right, claiming to be entitled thereto, and discharging its duties under color of authority. Applying the foregoing principles here, it is apparent that the petitioners are *de facto* officers. It is satisfactorily and sufficiently shown to establish as to them such status as *de facto* officers, that they hold appointments and commissions from a preceding Governor of this State to their respective offices for a term of four years; that they are in the possession of said offices, originally entered by right, and are discharging the duties thereof; that their appointments have been confirmed by the Senate of South Carolina; and that their appointments and commissions, except as to the petitioner, C. F. Rizer, are on their face for a term which has not yet expired. But under the established rule relating to *de facto* officers, Mr. Rizer, too, would come within the category of a *de facto* officer.

IV. The facts in the case of Mr. C. F. Rizer present a question somewhat different from the question affecting the other incumbent Commissioners who are now before the Court as petitioners, with reference to his right to bring his proceeding. Under our holding and under the authorities herein cited, Mr. Rizer is *prima facie* a *de facto* officer holding over, in possession, and in the performance of the actual duties of his office. The Court, of course, takes judicial notice that these Commissioners, and all other Commissioners composing the State Highway Commission, have been ousted from office by the proclamation of the Governor declaring the State Highway Department to be in a state of insurrection. This, however, is aside from the question before us for disposition in these cases. It appears on the face of Mr. Rizer's petition that his term of office, under his own contention, expired on October 28, 1935. It therefore becomes apparent that while he is still a *de facto* State Highway Commissioner, holding over, he

does not enjoy that status which would entitle him to maintain a proceeding such as this, against one in the possession of a *prima facie* title to the office.

V. It is evident that if our consideration of these cases should terminate at this point the judgment of the Court would necessarily be to continue the restraining order against all of the respondents except Mr. Frampton Toole. The decision of the cases would thus be confined within the narrow scope of the issue made by the pleadings. We have defined these proceedings to be suits for injunctive relief, in equity, to prevent the respondents from interfering with and molesting the petitioners in the possession of the office, which they now occupy. Should our consideration end here, it would still leave undecided and undetermined the more important question: The final and ultimate right to the titles to these offices, which are in such serious and ominous dispute.

The importance of the question not only affects the parties to the litigation, but in a broader and in a very vital sense it affects the welfare of the citizens of the whole State. The facts, and their attendant circumstances, present a grave situation, and demand a definite ruling from the Court, which should be made, if authority therefor can be found within the bounds of our jurisprudence.

We proceed, therefore, to consider the proposition—how far a Court of equity may or should go in these cases. This involves a mixed question, of how far the Court may go, as a matter of jurisdiction in the technical sense, and how far in the more extended and comprehensive sense of judicial policy. The qustion is this: Should the Court rest in a case of this sort, having reached a point calling for judgment vindicating a primary right—the right to immunity from being dispossessed and interfered with by irregular methods, leaving undetermined the title to the office? It has been taken for granted that the Court in its original jurisdiction, in equity, should not try the title to office in an equity action, brought to quiet the right to possession against attempts to

disturb it. Must parties in such a case, though in a Court having final appellate jurisdiction to settle the whole controversy, depart with but partial relief, and none as to the ultimate matter; and be forced to come back by the route of a civil action at law, praying another form of relief? As was said in the case of *Ekern v. McGovern*, 154 Wis., 157 142 N. W., 595, 615, 46 L. R. A. (N. S.), 796: "Under our liberal Code of Procedure, rightly understood and administered, is it true that such devotion to mere form is necessary, commendable, or really right?"

Under the proceedings now before us, we have all of the parties present who could possibly be interested in a contest over the title to these offices. While it is true that the State, on the relation of the Attorney General, is not named as a party, this omission presents no insuperable jurisdictional infirmity, for the reason that there is incorporated in the record of these proceedings the opinion of the Attorney General, given in his official capacity, directly and fully covering in detail the matters, things, and issues here under consideration. It should be, and is, elementary that the Court looks to the substance of things and not their shadow. To all intents and purposes the State is present.

When this case was heard, counsel for petitioners tendered the issue of title to the respondents subject to the consent of the Court to pass upon it. Counsel for the respondents, although in their returns they challenged the jurisdiction of the Court to try such title, fully and at length set forth in their returns their right and title to such offices. In their oral arguments, while denying that the Court might assume jurisdiction of the question, they themselves fully argued it and every phase of it; and so did counsel for the petitioners. If the Court may assume jurisdiction conformable to law, we deem it our plain, obvious, and imperative duty to do so. No possible prejudice can occur to the respondents or to the public by the title being finally quieted in this action. On the contrary, every legitimate private, as well as every public,

interest would be best promoted by the entire controversy being brought to a determination at the earliest practicable moment, and without the useless expenditure of money and time which would be involved in another action. Why then should the idea, that equity cannot take jurisdiction to try the title, interfere with undoubted competency to do so, where it is germane to a proper ground of equity action?

It is conceded that an action in equity will not lie to try title, if brought solely for that purpose. So much must be admitted; but it does not meet the question. These proceedings were instituted in equity; not to try the title, but to protect the possession pending another action yet to be brought as to the *de jure* right. Such right is legal in character, and presents primarily a legal question; but where a legal right is incidental to an equitable cause of action, then the limitless resources of equity will meet the case.

Another elementary principle comes in at this point. Where a Court of equity has acquired jurisdiction of the parties, and the subject-matter for one purpose it may properly adjudicate all cognate questions and settle the whole controversy, though the connecting matters would not, of themselves, form a primary subject for equitable interference. *Ekern v. McGovern, supra.*

In these cases the right to protection against disturbance pending trial of the title is the primary right. The right and title to the office is incidental thereto, but inseparably connected therewith, and should be judicially settled at the same time. The questions involved here are all questions of law. There are no issues of fact. Under these circumstances, the Court, having jurisdiction of the parties and of the primary subject-matter, is competent to settle the whole controversy, including the main issue and all the incidental controversies connected therewith, in a single judgment. I Story, Equity Jurisprudence, § 64.

As further authority supporting this conclusion, it is stated in High on Injunctions, after discussing the rule,

that an equity action is not maintainable for the purpose of trying title to an office; it is said, as a result of reviewing the authorities, the rule applies, "only to cases where the title to the office is the sole issue involved, and where the bill is filed for the primary purpose of determining that issue. And where the question as to the title to public office arises merely incidentally to the determination of a suit of which a Court of Equity otherwise has jurisdiction, the rule has no application." Section 1315a (4th Ed.).

It seems to us to be a logical deduction from the principles herein stated, that where the controversy as to the title to an office is incidental but germane to a proper subject of primary right in a suit for equitable relief, and the Court having the case in charge, has all the parties interested before it, it has competency to, and will, settle the incidental, as well as the primary controversy, where it clearly appears that justice and the public interests will best be served thereby. We so hold.

VI. We will now proceed to discuss the question involving the title to these offices.

Does the proper construction of the statute (Section 5867 of the Code) disclose that it was the intent of the General Assembly to fix a definite term of office for four years for State Highway Commissioner, to begin at a certain time and to end at a certain time?

This question requires the construction of Section 5867 of the Code 1932, the language of which is as follows: "A highway department for the State of South Carolina is hereby created and established, the same to consist of a State Highway Commission and a State highway engineer. The Highway Commission shall be composed of fourteen members, one from each of the fourteen judicial circuits of the State, who shall be appointed by the Governor, by and with the consent of the Senate. The present members of the State Highway Commission shall continue in office for the term of their present appointment, respectively, that

is to say, the present members of the commission from the ninth, tenth and fourteenth circuits shall remain in office until 1924 (and the members from the fourth, fifth, sixth, and seventh judicial circuits shall remain in office until 1926. As soon as practicable after the passage of this section, the Governor shall appoint five members of said commission to serve for a term of four years, four to serve for a term of three years, and one to serve for a term of two years, so as to make the term of office of five of the members expire in 1926, four expire in 1927, and five expire in 1928; that upon the expiration of the terms of office herein provided for successors thereto shall be appointed for a term of four years."

It is to be noted from the foregoing Highway Act that the Governor shall appoint the members of the State Highway Commission so that the terms of office of five Commissioners shall expire in 1926, four in 1927, and five in 1928; and that upon the expiration of their terms of office, as so provided, successors to them should be appointed by the Governor for a term of four years.

Pursuant to the Highway Act (Section 5867), Commissioners from the Second, the Ninth, the Tenth, and the Fourteenth Judicial Circuits were duly appointed by the then Governor on the 15th day of April, 1924. Under our construction of the Act, their terms of office expired on April 15, 1927; thereafter, their successors were appointed on May 3, 1927, for the succeeding 4-year term, which term, as we shall show, must be deemed to have commenced April 15, 1927, and to have expired on April 15, 1931, and that the next succeeding term expired on April 15, 1935.

The records show, however, that the present acting Commissioners from the said judicial circuits were appointed on the following dates: C. F. Rizer, from the Second Judical Circuit, appointed October 28, 1931; E. T. Heyward, from the Ninth Judicial Circuit, appointed January 31, 1933; R. J. Ramer, from the Tenth Judicial Circuit, appointed Sep-

tember 21, 1932; W. Fred Lightsey, from the Fourteenth Judicial Circuit, appointed September 1, 1932.

None of these Commissioners were reappointed as of April 15, 1935.

It is gathered from the record, however, that these Commissioners claim that their terms of office extend for four years from the dates of their appointments, respectively.

There is set out in the return of each respondent in this proceeding a copy of an opinion rendered by the Attorney General of this State, construing the section of the Code under consideration with relation to the claimed title of the petitioners to these officers, and with special reference to the commencement and the expiration of their terms. The Attorney General said: "The language 'so as to make the term of office of five commissioners expire in 1926, four expire in 1927, and five expire in 1928,' is important as showing that the General Assembly planned that the State Highway Commission should be a continuing body. To insure this the terms of the groups named were to expire in different years. It is mandatory, in the opinion of this office, that appointment to membership on the Highway Commission be made at all times so as to harmonize with, and preserve the classification of members, and the rotation fixed by the General Assembly. To do this when a vacancy occurs by expiration of term, death, or resignation, the person appointed will serve for whatever part of the term to which he was appointed remains, so that he will go out of office at the end of the four-year term he stepped into, regardless of date of his appointment."

The Attorney General reached the conclusion upon this reasoning, and upon the authorities cited in his opinion, that the term of office of State Highway Commissioners, C. F. Rizer. E. T. Heyward, R. J. Ramer, and W. Fred Lightsey, expired on April 15, 1935. This Court fully agrees with the reasoning and the conclusion reached by Attorney General Daniel. It appears entirely clear from the record

that the original term or tenure of Commissioners appointed from the Second, the Ninth, the Tenth, and the Fourteenth Judicial Circuits, commenced on the 15th day of April, 1924, which was the date of their appointments, so that their terms of office, pursuant to the Act, expired on April 15, 1927. Then commenced the currency of the 4-year term. The first 4-year term, as we construe the statute, expired on April 15, 1931; the next 4-year term expired on April 15, 1935.

The incumbent Commissioners were appointed to fill, and did fill, unexpired portions of the latter 4-year term, which expired on April 15, 1935.

This conclusion is fully sustained by the decision of our Court in the case of *Simpson v. Willard,* 14 S. C., 191, 196, from which we quote: "Upon the meeting of the first general assembly the classification of senators was made by lot [here indicated by statute], and a rotation fixed, which rotation has ever been kept unbroken, and can alone be kept unbroken by maintaining in the case of each senator from each county, a term of office definite as to its beginning and ending, and, should a vacancy occur by death or resignation during any current term, by filling the same for the remaining portion of such unexpired term, and for that period of time only. This rule in filling vacancies of terms has been rigidly followed as the only mode of preserving the mandate of the organic law, which requires that one-half of the senators may be chosen every second year."

Undoubtedly the appointment of State Highway Commissioners under our statute embodies the same principle contained in this quotation. Under the Constitution of this State, the term of office of a Senator is four years, just as under Section 5867 of the Code the term of a State Highway Commissioner is four years.

We quote again with approval from the opinion of the Attorney General: "The original set-up of the Highway Commission into three groups, to enter and to depart at stated periods in regular rotation is a fundamental feature of the

Highway law, intended to be a continuing and perpetual practice of this Commission until changed by the General Assembly, and this succession of entry and departure by the class of Commissioners cannot, in my opinion, be legally interfered with nor deranged by delayed appointments. These filling of vacancies in unexpired terms is incidental to the preservation of an existing term of office and hence must be so conducted an carried out as not to derange, but to preserve the purpose of succession and regular rotation so clearly intended and directed in section 5867 of the Code."

Clearly it follows that such orderly rotation, in order to create a continuing body, could not be carried out if the Commissioner appointed to fill a vacancy were to hold a full term of four years from the date of his appointment, regardless of the date of said appointment.

VII. Inasmuch as the statute creating the State Highway Department and the State Highway Commission does not provide for holding over until a successor is appointed and qualified, does one, whose term has expired, become an officer *de facto,* or is the office vacant, and he a mere trespasser in occupying it?

We have already herein given this question full consideration in Subdivison III of this opinion, and we hold that the incumbent Commissioners are *de facto* officers, holding over, and may continue to hold and occupy such offices until successors are duly appointed, qualified, commissioned, and confirmed by the Senate. The offices are not vacant, because they are occupied by *de facto* officers; nor are the incumbent Commissioners trespassers. As we are now passing upon the entire merits of the case, this holding, of course, includes Mr. Rizer.

In addition to the authorities cited in Subdivision III, we add the following in support of this holding: "Apart from any constitutional or statutory regulation on the subject there seems to be a general rule of law that an incumbent of an office will hold over after the conclusion of his term until

the election and qualification of a successor." 22 R. C. L., 554, Sec. 257.

From an annotation on the subject in 50 L. R. A. (N. S.), 365: "It has been held that it is the general rule of law that an incumbent of an office will hold over after the conclusion of his term until the election and qualification of a successor, even although there is no express provision of the law to that effect. *Central City v. Sears,* 2 Colo., 588; *Thomas v. Owens,* 4 Md. [189], 221; *Robb v. Carter,* 65 Md., 321, 4 A., 282; *State ex rel., Carson v. Harrison,* 113 Ind., 434, 16 N. E., 384, 3 Am. St. Rep., 663; *People ex rel., Stratton v. Oulton,* 28 Cal., 44."

We further hold that when successors to the incumbent Commissioners are duly clothed with the full muniments of office as herein stated, they can hold only for the unexpired remainder of the term to which they may be appointed. "Since the term of an office is distinct from the tenure of an officer, 'the term of office' is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed; and a holding over does not change the length of the term, but merely shortens the term of his successor." 46 C. J., 971.

VIII. We come next to a consideration of the important question dealing with the power of the Governor of the State, under the Highway Act, to make what is generally known as a recess appointment.

There is no provision in the section of the Code under consideration empowering the Governor to make recess appointments to fill vacancies while the Senate is not in session; nor do we find such power conferred by the Constitution. Other sections of the Code (2351, 3083, 3093, 3094) give the Governor certain powers with respect to making recess appointments, but in none of these is the right given to make recess appointments of State Highway Commisisoners. If any legal presumption may be drawn from this state of facts, it would be that the Legislature intended to withhold

from the Governor this power in regard to State Highway Commissioners.

If the power of the Governor to make recess appointments of State Highway Commissioners, clearly not being granted to him, expressly or impliedly, by the Code, is to be upheld, it must be found to be by virtue of the common law. This common law power can be deduced from no decisions of our Court. The contrary is found to be the case.

The general rule bearing on this question is found stated in 12 Corpus Juris, § 402, p. 898: "Under the American system of government the chief executive has no prerogative powers, but is confined to the exercise of those powers conferred upon him by the Constitution and Statutes."

Under this text is cited, as supporting authority, *State v. Bowden,* 92 S. C., 393, 75 S. E., 866, 870, *Richardson v. Young,* 122 Tenn., 471, 125 S. W., 664.

In the case of *State v. Bowden, supra,* the opinion in which was written by Mr. Justice Woods, it is stated:

"The principle is universally recognized that the Governor of a state has no inherent power of appointment to office, and that his power must be found *in the Constitution or statutes of the state. Elledge v. Wharton,* 89 S. C., 113, 71 S. E., 657; *Bruce v. Matlock* [86 Ark., 555], 111 S. W., 990; Throop on Public Officers, § 362; 8 Cyc., 857.

"After a review of the cases, the principle deduced is thus stated in the note to *People v. Freeman* (Cal.), 13 Am. St. Rep., 130.

" 'The truth is that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exercised by the people, but the Legislature may, as the law-making power when not restrained by the Constitution, provide for its exercise by either department of the government, or by any person or association of persons whom it may choose to designate for that purpose. *It is an executive function when the law has committed it to the*

*executive,* a legislative function when the law has committed it to the Legislature, and a judicial function, or at least a function of a judge, when the law has committed it to any member or members of the judiciary.' * * * (Italics added.)

"Since this supreme law which confers on the Governor the power of appointment expressly limits and conditions that power on the advice and consent of the Senate, it is clear beyond controversy that an appointment for the full term provided by the Constitution without the advice and consent of the Senate is beyond the power of the governor and without effect. *State v. Howe,* 25 Ohio St., 588, 18 Am. Rep., 321; *People v. Bissell,* 49 Cal., 407; *State ex rel., Attorney General v. Rareshide,* 32 La. Ann., 934; *Watkins v. Watkins,* 2 Md. [341], 354; *Brady v. Howe,* 50 Miss., 607; *Tappan v. Gray,* 9 Paige [N. Y.], 507; *State ex rel., Standish, Attorney General v. Boucher,* 3 N. D., 389, 56 N. W., 142, 21 L. R. A., 539."

In the foregoing case the Court found under the provisions of Sections 2351 and 3093, Code 1932, that the Governor could fill a vacancy occurring during a recess with respect to the office of magistrate; *the statutory authority therefor being expressly conferred.* Here, however, no such power is vested in the Governor by any constitutional or statutory authority, and we must conclude that in the absence of such authority the Governor is without power, by recess appointment, to fill vacancies occurring in the office of the State Highway Commission.

As was said in *State v. Hough,* 103 S. C., 87, 87 S. E., 436, 437: "Those holding offices created by the Legislature hold them subject to the legislative will. The power that creates an office can impose such limitations and conditions upon the manner of filling it, and the tenure and the exercise of the duties of the office, and may modify or abolish any of these, or the office itself, as its wisdom may dictate, when no provision of the constitution is contravened in doing so."

Citing *State v. Rhame,* 92 S. C., 455, 75 S. E., 881, Ann. Cas., 1914-B, 519; *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421.

It follows, from the principles herein enunciated, that the respondents, at this time, have no legal right or title to the offices in question, nor have they any right to the custody and occupancy of the same.

The respondents contend in their return and in argument that the term of office of all of the petitioners terminated, ended, and expired on April 15, 1935, and that these offices have been vacant from that day. As to this, the Court merely wishes to point out that from that date, April 15, 1935, until now, a civil action might have been commenced in a Court of law to test the title to these offices by an action in the nature of *quo warranto* under provisions set forth in the Code. No such action has ever been brought.

The Senate of South Carolina was in session on April 15, 1935, when the term of these offices expired. At that time the Governor could have submitted his proposed appointments to the Senate for confirmation. This was not done. The next opportunity for doing so will occur in January, 1936, when the Senate will again be in session, and at such time it will be lawful for the Governor to submit appointments of State Highway Commissioners from the Second, the·Ninth, the Tenth, and the Fourteenth Judicial Circuits for confirmation by the Senate.

Finally, it is contended by the respondents that the petitioners are not eligible to hold the offices in question, because they are in a state of rebellion and insurrection against the State of South Carolina and her duly constituted authorities, and consequently against the United States of America, as shown by a proclamation issued by his Excellency, the Governor of the State of South Carolina; they having taken an oath to protect and defend the Constitution of the United States. This contention is without merit. The respondents have directed our attention to

no statutory law of this State, nor to any provision of our Constitution, and we know of none, which would in anywise maintain or support this proposition.

IX. Upon the call of this case several motions, previously noticed, were brought to the attention of the Court, at which time the Court announced that such motions would be taken under advisement and passed upon when the main case was considered.

The first motion was for an order requiring the petitioners to make more definite and certain Paragraph 1 of their several complaints, in the following particulars:

(a) By setting out precisely in what manner the plaintiff was duly appointed Highway Commissioner, and to fill what precise vacancy, if any, existed on the date alleged.

(b) By setting out precisely when said term began, and when it will end.

We think the paragraph of the complaint or petition to which reference is made sufficiently sets forth the ultimate facts pleaded. It is contrary to our theory and system of Code pleading to allow allegations of evidentiary matter. The questions raised by this motion are properly matters of defense. Furthermore, it appears from the returns filed by the respondents that they were in the full possession of the very information they desired alleged in the complaints, as such matters were set out in their returns. This motion was granted, but it is no longer important in the view we take of the case.

Motions were also made to dissolve and vacate the temporary restraining order, upon the ground that the same was inadvertently and improvidently issued, in that the same is alleged to be ancillary, and that at the time of the issuance of the rule to show cause no action had been commenced nor summons served upon the respondents, and for this reason it is charged that the Court has no jurisdiction of the subject-matter involved.

What we have already said in our discussion of the main issues herein disposes of these points.

It was further moved that the restraining order should ▮ be dissolved upon the ground that the complaint upon which it was based had no supporting affidavit, and that the complaint could not be used as an affidavit upon an application for an injunction because its verification was defective, amounting to no verification at all.

In support of this contention the respondents cite the case of *International Accountants' Society v. Fell,* 144 S. C., 64, 142 S. E., 34.

A consideration of this point becomes immaterial now that the verified returns of the respondents have been filed and are before the Court, and it appearing therefrom that the essential and material facts alleged in the petitions, pertinent to the proceedings, are not put in issue.

It is the judgment of this Court that the returns of the respondents are deemed insufficient; it is further the judg- of the Court that the respondents, J. C. Long, Louis Richardson, W. L. Rhodes, and Frampton Toole be, and they hereby are permanently enjoined and restrained from in any manner interfering with the petitioners in their possession of said offices, and from interfering with them in any manner in the performance of their duties as *de facto* State Highway Commissioners of the State of South Carolina.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.