# SUPREME COURT.

## IN THE MATTER OF DANIEL S. BAKER.

It is not allowable, on *habeas corpus*, to inquire into the regularity of the proceedings upon which process is based, or the sufficiency of the evidence, or accuracy of the decisions in those proceedings, not affecting the jurisdiction of the court or officer issuing the process. Defects in such particulars can be corrected only on *writ of error* or *certiorari*.

The proceedings authorized by 1 *R. S.* 125, §§ 51, 52, and 53, to compel the delivery of books and papers, by public officers to their successors, are applicable, as against officers *de facto*, only, to cases where the title of the relator to

In the matter of Daniel S. Baker.

the office is clear. If the title is not clear, the remedy is by action in the nature of a *quo warranto*.

If an officer, acting under these provisions of the statute, applies them to cases to which they do not extend, he transcends his jurisdiction, and his acts thus far are void.

The statement of the result of the canvass of votes given at a town meeting, held for the election of town officers, entered by the clerk of the meeting in the minutes of the proceedings kept by him, as required by 1 *R. S.* 344, § 9, is intended by statute as the certificate and evidence of election.

Proceedings, under 1 *R. S.* 125, § 51, were instituted upon the petition of P. against B. before the county judge of Ontario, to compel B., who had been supervisor of West Bloomfield, to deliver the books and papers of the office to P., his successor. The petitions set forth that, at the close of the canvass at the town meeting, a statement of the result was entered in the minutes, which stated that P. was elected supervisor, and that the names of P. and B. were entered on the poll list as voters; that P. took the official oath as supervisor before the town clerk, who certified the same, and it was filed in the town clerk's office; and that P. thereupon entered upon the duties of the office. B. appeared before the county judge, and interposed an answer to the petition, verified by his oath, setting up various irregularities in the election, but did not controvert any of the facts above stated. *Held*, that these facts stated in the petition, being uncontroverted, established *prima facie*, that P. was entitled to the office; that B. could not, in the summary proceedings against him, go behind these facts, and attack the election for irregularity; and that inasmuch as the only matters alleged by B., to impeach the title of P., related to the regularity of the election, his *prima facie* title was clear and free from reasonable doubt.

*It seems* that, in proceedings under 1 *R. S.* 125, § 51, the existence of facts constituting a *prima facie* title may be controverted, such as the making and entry of the statement in the minutes of the election, the alleged contents of the statement, and the taking of the oath, &c., and thereby so much doubt be created as to present a question of right beyond the jurisdiction of the officer. But alleged irregularities in the election can only be made available by an action analogous to a proceeding by *quo warranto*, instituted directly to try the title.

Where the justices of the peace, who presided at a town meeting, several days afterwards decided that the proceedings were illegal, in consequence of certain alleged irregularities, and that no choice had been made of town officers to be chosen, and the offices were therefore vacant, and thereupon the justices proceeded to appoint town officers. *Held*, that such appointment was void.

The return of the sheriff to the writ of *habeas corpus* stated that the imprisonment was by virtue of a warrant issued by the county judge in the proceeding above stated. The warrant did not show that there was any adjournment or continuance of the proceeding from the 14th of April, when the order to show cause was returnable, and the answer was put in, to the 30th of April, when

the warrant was issued. *Held*, that no want of jurisdiction thereby appeared.

*Held*, further, that parol proof of a continuance was receivable if necessary to supply the omission of a recital of such facts in the warrant.

Assuming that there was no formal adjournment or continuance, the decision and warrant were for that reason, at most, merely erroneous: the error did not affect the jurisdiction of the judge, and would not be regarded on *habeas corpus*.

On *habeas corpus*, to the sheriff of Ontario county, to be relieved from imprisonment.

The case was heard at the court-house in Canandaigua, the 15th of May, 1855.

The return of the sheriff to the writ stated, that the imprisonment was by virtue of a warrant, issued by CHAS. J. FOLGER, county judge of Ontario county, a copy of which was annexed.

The warrant, under the hand and seal of said judge, recited in substance, that on the 11th of April, 1855, Thomas R. Peck presented his petition in writing to said judge, setting forth, that at an annual town meeting, held in the town of West Bloomfield, on the 3d of that month, the said Peck was duly elected supervisor of said town; that at the close of the canvass at said town meeting, a statement of the result was entered at length, by the clerk of the meeting, in the minutes of its proceedings kept by him as required by law, and was caused by him to be publicly read to the meeting by one of the justices of the peace who presided at said meeting, the said clerk being unwell; that said statement set forth that said Peck was elected supervisor of said town; that the names of the said Peck and Baker were entered on the poll list as voters at said town meeting; that, on the 6th of April, the said Peck took and subscribed, before the town clerk of said town, the oath of office as supervisor, and the clerk certified the day and year the same was taken, which certificate was delivered by him to the said Peck, who, on the same day, caused the same to be filed in the office of said clerk, and entered upon the duties of the said office of supervisor; that the immediate predecessor of the said Peck, in the said office, was the said Daniel S. Baker; that the term of

In the matter of Daniel S. Baker.

office of said Baker, as such supervisor, expired upon the said Peck being elected, and having qualified as aforesaid; that on the 7th and 10th days of said April, the said Peck demanded of said Baker, personally, all the records, books, and papers in his possession and under his control belonging to said office, but the said Baker refused to deliver to him the same or any of them; and that at the time of making the complaint, the said Baker had in his possession or under his control divers records, books, and papers belonging to said office, and had wholly neglected to deliver them, or any of them, to the said Peck, and to make oath as to whether he had any, or what records, books, and papers belonging to such office in his possession or under his control; and in and by which said petition, the said Peck prayed for an order in pursuance of the statute, to be directed to said Baker, requiring him to show cause why he should not be compelled to deliver said records, books, and papers to the said Peck; which petition, and the facts therein stated, were verified by the oath of the said Peck; and the petition was accompanied with an affidavit verifying the demand on the 10th of April, and the refusal to deliver said records, books, and papers; that the said judge was satisfied by the oath of the said Peck, and the said affidavit, that said books and papers were withheld, and did thereupon grant an order directing the said Baker to show cause before the said judge, at his office in the village of Geneva, on the 14th of April, at 2 o'clock, P. M., why he should not be compelled to deliver the records, books, and papers in his possession, or under his control, belonging to the said office, to said Peck; and directing that a copy of said petition, affidavits, and order be served on said Baker, personally, on or before the 12th of April; that, at the time and place for that purpose named in said order, the said Peck and Baker personally, and by their counsel respectively appeared before said judge, and due proof having been made of the service of said order, the said judge proceeded to inquire into the circumstances; and the said Baker did not then, or at any other time, make affidavit before the said judge, that he had truly delivered over to the said Peck, or to any

In the matter of Daniel S. Baker.

other person, all such books and papers in his custody, or appertaining to the said office, within his knowledge; and that it appeared to said judge that said books and papers were withheld; after which recitals it was stated in said warrant:—

"Now, therefore, by virtue of the statute in that case made, I, the said judge, do, in the name of the people of the state of New-York, command the sheriff of the said county of Ontario, to commit the said Daniel S. Baker to the jail of the said county, there to remain until he shall deliver such books and papers, or be otherwise discharged according to law.
"Given under my hand and seal, at Geneva, in
the said county, this 30th day of April, 1855."

In answer to the return of the sheriff, the said Baker presented an affidavit, stating that at the time of his appearance before the said county judge, on the 14th of April, in pursuance of the order theretofore made, he interposed an answer, duly verified by his oath, to the petition of the said Peck, and delivered the same to the said judge—a copy of which answer was annexed to said affidavit—and therefore objected that the said judge had no right or jurisdiction to hear, try, and determine the question in dispute and issues between him and the said Peck; that on the hearing before said judge, no evidence, testimony, or affidavit was taken, made, or introduced by either him or the said Peck, other than the petition and affidavit annexed thereto, and the answer of him the said Peck; that the hearing and arguments of counsel of the respective parties were had on those papers alone; that there was no adjournment or continuance of the proceedings before the county judge from the 14th to the 30th of April; and that at the close of the hearing before the county judge, he, the said Baker, understood the proceedings were ended and returned home, and that he heard no more of the matter until he was arrested on the 1st of May, instant.

The answer to the said petition was addressed to the said county judge, and was, in substance, as follows, 1st. It denied

In the matter of Daniel S. Baker.

that the said Peck was then, or ever, supervisor of West Bloom-
field, or that he was, on the 3d day of April, 1855, or at any
other time, duly elected, or otherwise constituted or appointed
such supervisor, or that he ever acted, or had a right to act as
such.   2d. It denied that the said Peck was then, or ever in
law or in fact, the supervisor of said town, or that, as such su-
pervisor, or otherwise, he was then, or ever, entitled to the
books and papers belonging to such office. .3d. It stated that
the said Baker then was, and for more than one year last past
had been, supervisor of said town, and that during all that time
he had been, and then was, justly entitled to the possession,
custody, care, and control of all the books and papers belong-
ing to said office.   4th. It alleged that, at the annual town
meeting in said town, on the first Tuesday of April, 1854, the
said Baker was, by the greatest number of votes, chosen and
elected supervisor of said town for one year, and until another
should be elected or appointed in his place; that immediately
thereafter he accepted the office, took the oath of office, and
entered upon the discharge of the duties of the office, and ever
since had continued to, and then did, discharge the duties
thereof; and that, since the day of the said election, no other
person had been duly elected or appointed to said office.   5th.
It set forth that, at the day and place for the holding of the last
annual town meeting in said town, three of the justices of the
peace of said town were present, and presided at said meeting,
and after the transaction of some other business by the electors
present, the said justices proceeded to receive the ballots of the
electors for the several officers to be chosen by ballot, without
making any proclamation of the time when the polls would be
closed, or the meeting would adjourn; that after keeping the
polls open about two hours, the justices closed the ballot box
and took it away from the place of meeting, without any ad-
journment or any motion, proclamation, or notice; that about
two hours elapsed before said ballot box was again opened,
during which time several persons appeared for the purpose of
voting, but were unable to do so for the reason stated; that the
ballot box was not, during that time, in the possession or under

the control of the said justices, or any of them, but the same
and its contents were taken away by a person who was a can-
didate for an office at said meeting, and deposited in another
room in the building, then occupied as a tailor shop, and there
left by him, unprotected and unguarded, for a considerable
time; that the polls were, between 1 and 2 o'clock, P. M.,
again opened, without proclamation or motion, and were closed
again nearly an hour before sunset on the same day, before
several persons, who came for the purpose and with the inten-
tion of voting, had been able so to do; that on counting the
votes found in said box after it was finally closed, the whole
number did not correspond with the number of names of voters
on the poll list; that in consequence of these and other irregu-
larities, the justices afterwards decided that the proceedings
were illegal, and no choice had been made of town officers to
be chosen, and the offices were therefore vacant; and the jus-
tices, on the 11th of April, proceeded to appoint, by a writ-
ten appointment under their hands and seals, town officers—a
copy of which appointment is annexed to the answer, showing,
among other things, that the said Baker was appointed super-
visor; that the said Baker accepted the office, and on the same
·day took the oath of office, and entered upon the duties thereof,
whereby he was duly and legally appointed to the office of su-
pervisor of said town for the present year, and justly and legally
entitled to hold the office.   6th. It stated that both the said
Baker and Peck were candidates for the office of supervisor at
said town meeting, and voted for by some of the electors; that
the said Baker received a majority of all the votes fairly and
legally cast at said meeting for that office, and was by reason
thereof fairly and legally entitled to the office, and but for the
said illegal proceedings would have been declared elected thereto.
7th. It alleged that, from his election as supervisor in April,
1854, to the 11th of April, 1855, the said Baker held the office
by virtue of said election, and afterwards by virtue of said ap-
pointment; that ever since the first Tuesday in April, 1855,
he had been the acting supervisor of that town, and actually
discharged all the duties of the office; that during all that time

he had by reason thereof been justly and legally entitled to the custody and control of all the books and papers appertaining to the office, of which the said Peck, before the issuing of the order had notice.

At the hearing on the *habeas corpus*, Judge FOLGER was examined as a witness on the part of the sheriff, and testified in substance, under an objection by the counsel of the said Baker to any evidence conflicting with what appeared on the face of the warrant of commitment, that the issue was joined at Geneva; that the matter was adjourned to the 20th of April, at Canandaigua; that at the close of the argument before him he stated he would take a few days to consider the case, if no objection was made; that none was made; that one of the counsel for the relator asked if it was best to adjourn to any particular day; the witness stated just as they saw fit; that it was not necessary, as he could inform the prevailing party by letter, when he had made his decision; that no objection was taken to that course; that before issuing the warrant he wrote to the counsel of the relator, stating the decision and ground of it, and requested him to inform the counsel of the other party.

S. V. R. MALLORY *and* J. A. SPENCER, *for Baker.*

E. G. LAPHAM *and* J. C. SMITH, *for sheriff.*

T. R. STRONG, Justice. The only questions which legitimately arise in this case, relate to the jurisdiction of Judge FOLGER to issue the warrant under which the imprisonment in question exists. If it does not appear that such jurisdiction was wanting, the relief sought must be denied.

It is not allowable, on *habeas corpus,* to inquire into the regularity of the proceedings upon which process is based, or the sufficiency of the evidence, or accuracy of the decisions in those proceedings, not affecting the jurisdiction of the court or officer issuing the process. Defects in such particulars, so far as there is any remedy on account of them, can be considered and corrected only on writ of error or certiorari. Colorable authority

to issue the warrant in the present case, is all that is requisite to sustain it. These views are not controverted by the counsel for Baker, and they are fully sustained by numerous authorities. (2 *R. S.* 568, § 41; *The People* agt. *Cassels,* 5 *Hill,* 164; *In the matter of Prime,* 1 *Barb. S. C. R.* 340; *Bennac* agt. *The People,* 4 *Barb.* 31; see 3 *Hill,* 661–666, *in notes and cases there referred to.*)

The first ground upon which jurisdiction of the warrant is assailed is, that there was no continuance or adjournment of the proceedings before the county judge, from the 14th of April, when the order to show cause, granted upon the petition, was returnable, and the answer of Baker was put in. The warrant was issued on the 30th of April: it does not appear on its face that there was any continuance or adjournment from the 14th; and it is insisted that, without a continuance or adjournment, the proceedings terminated on the 14th; that as the warrant does not show a continuance or adjournment, none can be intended; and that parol proof could not be received to establish that there was one in fact, and supply the omission.

I am not able to assent to the position that jurisdiction is disproved by the absence of a recital in the warrant of a continuance of the proceedings; on the contrary, I am satisfied, that without such a recital, and without any parol proof on the subject, no want of jurisdiction thereby appears. It was not necessary that all the facts requisite to the jurisdiction of the officer should be disclosed by the warrant.

In *Seaman* agt. *Duryea,* (1 *Kernan,* 324,) it was held that process of commitment, issued by a surrogate, for a neglect or refusal of a guardian to comply with a decree made in proceedings against him before the surrogate for an account, need not recite all the facts and proceedings necessary to confer jurisdiction. The court say, in reference to it, "It was issued in a matter, and recited proceedings over which the surrogate had jurisdiction, and it is not necessary that the process should recite all the proceedings. The cause is substantially stated, which is sufficient. (*People* agt. *Nevins,* 1 *Hill,* 154.) If there was a jurisdictional defect in the proceedings, it should be

shown by the party complaining of them." (*Bennac* agt. *The People*, 4 *Barb*. 31.)

In *The People* agt. *Nevins*, (*p*. 159,) COWEN, J., says, "On *certiorari* to remove a summary conviction before a magistrate, though a criminal case, the superior court will intend that he had acquired jurisdiction by the proper notice, or other form adapted to the nature of the case." (*See also Hart* agt. *Seixas*, 21 *Wend*. 47, *and cases cited*.) This goes much further than the present case calls for, to uphold the jurisdiction of the warrant. I am also of the opinion, that parol proof of a continuance was receivable, if necessary to supply the omission of a recital of the facts in the warrant. Such proof does not contradict the warrant; it simply supplies a fact as to which the warrant is silent, and I do not perceive any good reason why the warrant in such a case may not be aided by parol in respect to like facts.

The proof given shows that the proceedings were duly adjourned from the 14th, when the meeting was at Geneva, to the 20th of April, at Canandaigua, at which time and place the argument was had; that at the close of the argument, with the assent of the parties, the decision was postponed for a few days, to allow of further consideration of the case, it being arranged between the judge and the counsel, that on making his decision he would write to the prevailing party, informing him thereof. This postponement and arrangement were binding on the parties, and the decision and issuing of the warrant without appointing another meeting, was not, I think, even an irregularity.

But there is another decisive answer to the point under consideration, which is, that assuming there was no formal adjournment or continuance, the decision and warrant were for that reason, at most, merely erroneous; the error did not affect the jurisdiction of the judge, and would not be regarded·on *habeas corpus*. There was no proof of a formal or intentional abandonment of the proceeding, and the utmost that can be claimed is, that the judge, without any announcement of his design to do so, took time to decide the case.

In *Horton* agt. *Auchmoody*, (7 *Wend*. 200,) it appeared that

In the matter of Daniel S. Baker.

a justice of the peace granted an adjournment to a plaintiff in a suit before him when he had no right to do so, and afterwards rendered judgment against the defendant in his absence : it was held that the judgment, although erroneous, was not without jurisdiction, and therefore void; that the case was one simply of an error in the exercise of jurisdiction.

In *Hard* agt. *Shipman*, (6 *Barb.* 621,) it was held that a justice, having acquired jurisdiction of a cause and the person of the defendant, did not lose it by erroneously adjourning the cause to the 26th, instead of the 22d, of July, contrary to the agreement of the parties; and that a judgment rendered by him in the suit against the defendant on the 26th, in the defendant's absence, was valid until reversed on *certiorari*. The principle of these cases appears to apply to the question under consideration. No question is made in respect to jurisdiction up to and including the 14th of April.

The remaining three points against the jurisdiction of the county judge to issue the warrant are reducible to one, viz.— That Baker was in, and held, the office of supervisor, by color of right, and was supervisor, at least *de facto;* that the question of right to the office, upon the respective claims of Peck and Baker, could only be tried by a direct proceeding in the nature of a *quo warranto;* and that, upon the answer coming in, the county judge no longer had jurisdiction of the proceeding. The provisions of the Revised Statutes, under which the proceeding before the county judge was had, are, (1 *R. S.* 358, § 5,) " Whenever the term of office of any supervisor or town clerk shall expire, and another person shall be elected or appointed to such office, it shall be the duty of such succeeding supervisor or town clerk, immediately after he shall have entered upon the duties of his office, to demand of his predecessor all the records, books, and papers under his control belonging to such office."

" § 7. It shall be the duty of every person so going out of office, whenever thereunto required pursuant to the foregoing provisions, to deliver, upon oath, all the records, books, and

In the matter of Daniel S. Baker.

papers in his possession, or under his control, belonging to the office held by him."

"§ 9. If any person so going out of office, or his executors or administrators, shall refuse or neglect, when thereunto lawfully required, to deliver such records, books, or papers, he shall forfeit to the town, for every such refusal or neglect, $250; and it shall also be the duty of the officer, or officers, entitled to demand such records, books, and papers, to proceed to compel the delivery thereof in the manner prescribed in the 6th title of the 5th chapter of this act,"—(certain sections of which title are made applicable.)

The manner prescribed (1 R. S. 125, § 51) is, that the successor may make complaint to either of certain officers, and among others the county judge, " and if such officer be satisfied by the oath of the complainant, and such other testimony as shall be offered, that any such books or papers are withheld, he shall grant an order, directing the person so refusing to show cause before him, within some short and reasonable time, why he should not be compelled to deliver the same."

"§ 52. At the time so appointed, or at any other time to which the matter may be adjourned, upon due proof being made of the service of said order, such officer shall proceed to inquire into the circumstances. If the person charged with withholding such books or papers, shall make affidavit before such officer, that he has truly delivered over to his successor all such books and papers in his custody, or appertaining to his office, within his knowledge, all further proceedings before such officer shall cease, and the person complained against shall be discharged."

"§ 53. If the person complained against shall not make such oath, and it shall appear that any such books and papers are withheld, the officer before whom such proceedings shall be had, shall, by warrant, commit the person so withholding to the jail of the county, there to remain until he shall deliver such books or papers, or be otherwise discharged according to law."

The proceeding authorized by these provisions is of a very summary character, and obviously was intended to be applica-

ble as against officers *de facto*, only to cases where the title of the relator to the office is clear. If the title is not clear, the remedy is by action in the nature of a *quo warranto*, which is the ordinary remedy for the trial of the title to offices and franchises, the right to which is in dispute, and in which the trial may be by jury, and the usual modes of reviewing decisions are allowed.

In *The People* agt. *Stevens*, (5 *Hill*, 616–629,) which was an application for a *mandamus* by one claiming to be clerk of the common council of the city of Brooklyn, to compel his predecessor in office to deliver to him the books and papers, BRONSON, J., says, "If the relator wishes to try the right to the office, it must be done by a *quo warranto*. If his title is clear, then he has a complete remedy by applying to a judge for an order to deliver the books and papers."

In a note to that case (631–634), is an opinion of KENT, circuit judge, in a case before him under the provisions above given, in which he discusses the question, and comes to the conclusion that, "an officer acting under the statute in question has no right to grant the order prayed for, unless the title of the applicant is clear and free from reasonable doubt."

In the matter of *Whiting*, (2 *Barb. S. C. R.* 513–518,) which was a proceeding under the same statute, EDMONDS, J., says, " The counsel for the defendant in these proceedings were right in saying that the question before me involved the title to this office, and that that title could be determined only on a *quo warranto*, and not in this summary proceeding. I can here only determine the right to the present possession of the office, and that on a *prima facie* case for the complainant." The counsel for the sheriff do not controvert, but assent to this doctrine.

The provisions of the statute being thus limited, if an officer acting under them applies them to cases to which they do not extend, he transcends his jurisdiction, and his acts thus far are void. If this be not so, there is no mode of confining the officer within the appropriate limits. He might try disputed titles in his discretion. So far as there is power in the officer to act,

the exercise of that power is not even error. And if the trial of the title was erroneous merely, and not void, a common law *certiorari*, which is the only mode of reviewing the proceeding, would not reach the error.

Was then the title of the relator, Peck, to the office in question, clear and free from reasonable doubt? If it was, the warrant of the county judge is valid: if it was not, the warrant is void.

The statute, in relation to the election of town officers, (1 *R. S. 344*,) after providing for a canvass of the votes at a town meeting, proceeds:—

" § 9. The canvass being completed, a statement of the result shall be entered at length by the clerk of the meeting, in the minutes of the proceedings to be kept by him as before required, which shall be publicly read by him to the meeting; and such reading shall be deemed notice of the result of such election to every person whose name shall have been entered on the poll list as a voter."

It is stated in the warrant in question, that the petition presented to the county judge set forth that, at the close of the canvass at the town meeting, a statement of the result was entered in the minutes, which stated that Peck was elected supervisor, and that the names of Peck and Baker were entered on the poll list as voters; that Peck took the official oath as supervisor before the town clerk, who certified the same, and it was filed in the town clerk's office, and that Peck thereupon entered on the duties of the office. The recitals showed full compliance with the statute in regard to the election of supervisor, and the statement at the close of the canvass, and showed that Peck was duly elected, that he duly qualified, and entered upon his official duties. And none of these facts so recited were denied. As the case stood before the county judge upon the petition and answer, it appeared that all the evidence for which the statute has made provision of the election of a supervisor, showed that Peck was elected. The statement in the minutes is intended by statute as the certificate and evidence of the election.

It cannot be disputed, I think, that the facts recited, which were uncontroverted, established, *prima facie*, that Peck was entitled to the office; and this *prima facie* title was clear and free from reasonable doubts, unless it was weakened and doubts were created by the matters alleged in the answer to impeach the title. Those matters related to the regularity of the election, and consisted of various irregularities and acts of misconduct, as omitting to make proclamation as to the time the polls would be closed, closing the ballot box for about two hours near the middle of the day, without any adjournment, motion, proclamation, or notice, allowing the ballot box to be taken from the room by a candidate for an office at the meeting, and leaving it unguarded, closing the box nearly an hour before sundown, and similar irregularities. If a *prima facie* title may be assailed in this way in such a proceeding, then undoubtedly a question was presented which the county judge had not power to try, and it was his duty to dismiss the petition.

The existence of facts constituting a *prima facie* title might, I am satisfied, be controverted, as the making and entry of the statement in the minutes of the election, the alleged minutes of the statement and the taking of the oath, &c., and thereby so much doubt be created as to present a question of right beyond the jurisdiction of the officer; but upon the best consideration I have been able to give to the question, in the brief time allowed me for making a decision, I am inclined to think that the respondent could not, in the summary proceedings against him, go behind these facts and attack the election for irregularity and misconduct, and thus divest the officer of jurisdiction. The only mode in which such facts can be made available, is by action analogous to the proceeding by *quo warranto* instituted directly to try the title. The remedy of Baker was to surrender the office, and the books and papers, and resort to such an action.

In *The People* agt. *Stevens*, before cited, NELSON, Ch. J., says, "On a proceeding by *mandamus*, involving a dispute as to which of two persons has been elected to an office—and indeed in any other proceeding involving the like inquiry, except

*quo warranto,* the regular determination of the board of canvassers is to be deemed conclusive upon the parties. The original merits, by which I mean the questions arising upon a canvass of the votes, cannot be thus reviewed; but the result, as finally certified and declared by the board, is controlling," and in support of which he refers to several cases.

In *The People* agt. *Jones,* 20 *Wend.* 81, 85, BRONSON, J., says, " It would lead to many evil consequences, if the person chosen, or any one else, was either required or permitted to go beyond the fact that the proper public officers have canvassed the votes, ascertained and declared the result in the forms prescribed by law. There is, indeed, one way in which the proceedings may be overhauled—by *quo warranto.*"

In *The People* agt. *Vail,* (12 *Wend.* 12, 14,) BRONSON, J., says, " The decision of the canvassers was conclusive in every form in which the question could arise, except that of a direct proceeding by *quo warranto* to try the right." (*The People* agt. *Seaman,* 5 *Denio,* 409, 412, 413.)

It would seem to be best calculated to do justice to parties and promote the public interests, to give effect to the *prima facie* title to an office, whenever the facts proving it are not disputed, and the proceeding in which the question of title arises, whatever it may be, is one in which an inquiry into matters behind those facts is not allowable. A *prima facie* title is a good and sufficient title until overcome.

The appointment of Baker as supervisor by the justices was clearly void; and if I am right in the views above taken, as to the *prima facie* title of Peck to the office, Baker had not even a colorable title; and that he was supervisor *de facto,* of itself formed no objection to the proceeding against him. (*The People* agt. *Stevens,* 5 *Hill,* 633, *note.*)

My opinion upon the whole case is, that the imprisonment is not illegal, and that the party imprisoned should be remanded.

Ordered accordingly.