14729

BRUNER v. SMITH

(198 S. E., 184)

Messrs. *A. H. Dagnall* and *C. B. Earle,* for petitioner,

Messrs. *R. T. Jaynes* and *Hughs & Hughs,* for respondent,

July 21, 1938.

*Per curiam.*

This is a summary proceeding in the original jurisdiction of this Court under Section 837, Code of 1932, for the possession of the books, papers, moneys and records of the office of comptroller for Oconee County.

The office of comptroller for Oconee County was first created by an Act of the Legislature approved February 17, 1933, 33 St. at Large, p. 66, and while amended twice, the section thereof under consideration remains intact as when first enacted into law, and reads as follows:

"§ 2. Appointment—Qualification—Term—Pay.—The Comptroller shall be appointed and removed by the Governor upon the recommendation of the County Senator, with the

County Members of the House of Representatives or a major fraction of them. The Comptroller shall be a person fully capable of keeping and auditing the books of the county; he shall hold office for a term of four years and until his successor is appointed and qualified  *   *   * ."

On May 12, 1933, the respondent was appointed, commissioned and qualified as comptroller for Oconee County, since which time he has been in possession of the books, papers, documents, moneys and things belonging or appertaining to this office and performing the duties of the office under the original appointment. On May 28, 1938, upon the recommendation of the senator, and one of the two members of the House of Representatives of said county, the Governor of the State of South Carolina commissioned, constituted and appointed petitioner as comptroller of Oconee County. Petitioner duly executed the required bond conditioned for the faithful performance of the duties of such office, which bond was duly approved by the officers of the county appointed to approve bonds given by the public officials of the county, and this bond and the commission of petitioner have been recorded in the office of the Clerk of Court for Oconee County.

Upon the refusal of respondent to deliver to petitioner possession and custody of said office and all books, papers, documents, moneys and things belonging or appertaining thereto, after demand therefor, this action was commenced.

There is no dispute as to the facts above set forth, the position of respondent being that under the wording of the Act creating the office of comptroller for Oconee County, the Governor could appoint this officer only upon the recommendation of the county senator and both of the members of the House, since there could be no "major fraction of them"—that the word "them" referred solely to the members of the House of Representatives; and that petitioner is not "a person fully capable of keeping and auditing the books of the county."

In respondent's return to the rule to show cause why he should not surrender the said office with all papers, etc., relating thereto, he pleaded that petitioner was not "a person fully capable of keeping and auditing the books of the county." And thereupon gave notice that on the call of the proceeding, he would move for an order of reference to take testimony on the issues of fact raised by the return as to the qualification of petitioner for appointment.

This motion must be refused. It is not the duty of the Court to inquire into the qualifications of petitioner. This duty is reposed in the members of the county delegation recommending for appointment, and in the Governor making the appointment, and the legal presumption is that they did their duty. The salary named in the Act is not suggestive that it was anticipated that a C. P. A. would be appointed; and if in fact the petitioner is not "a person fully capable of keeping and auditing the books of the county," the section of the Act creating the office of comptroller for Oconee County above quoted not only provides for his appointment, but for his removal, and necessarily it means removal for cause, and not merely upon the whim and caprice of the members of the county delegation; otherwise, the term of the appointee would have been at the pleasure of the legislative delegation of Oconee County or for four years, if not removed, and until his successor is appointed and qualifies.

The four-year term of office of respondent has long since expired, and he has been holding over "until his successor is appointed and qualified."

This is not an action to try title to the office, but a proceeding to put one who holds *prima facie* title thereto in the custody and possession of the records, papers and books of the office in dispute.

We may well quote from the opinion in *Burnett v. Langston*, 164 S. C., 99, 162 S. E., 72, 73:

"In *Ex parte Whipper*, 32 S. C., 5, 10 S. E., 579, 582, the Court uses this language, which is clear and forcible:

'The authority created for that purpose had declared Tal-bird duly elected. Right or wrong, he had been commissioned, qualified, and entered upon the discharge of his duties as Probate Judge. His *prima facie* title was clear; and, in the language of Judge Strong, in the case of Baker, [11 How. Pr. 418] the remedy of the petitioner, Whipper, was to surrender the books and papers of the office, and, if so advised, to resort to his civil action, in the nature of a *quo warranto*, to test the title. The records of a public office are in no sense private property. They are very important to every citizen. It is good policy to require that there should be no unreasonable delays in determining contests as to elective offices.'

"The same reasoning is applicable to an appointive office. *Verner v. Seibels,* 60 S. C., 572, 39 S. E., 274. 'A *prima facie* right or title on the part of the relator to the office is all that is necessary, or in fact involved, in mandamus proceedings to compel the surrender of the insignia, etc., of the office. This is so for the reason that a *prima facie* title to a public office confers a right to exercise its functions, and a right to the possession of the insignia and property thereof, and upon such *prima facie* title the Court will compel the delivery of the insignia and property, in order that the functions and duties of the office may be exercised.' 18 R. C. L. 263.

"While the title to public office cannot be adjudicated on an application for a mandamus, sufficient investigation may be made in such proceeding to ascertain whether petitioner has a *prima facie* title to the office or not. 'A person holding a certificate of election or a commission from an officer or tribunal authorized to issue the same, and who qualifies and properly demands possession has the *prima facie* right of possession as against a recalcitrant incumbent who holds over after his term expires.' 38 Corpus Juris., 709. * * *

"In a proceeding such as this the Court will give full faith and credit to the commission executed by the Governor, and

will not undertake to go behind it. 'The commission or certificate of election to the office in dispute and qualification thereunder is *prima facie* title to the office and the Courts will not in a mandamus proceeding to compel the surrender of the office to the holder go behind the commission or certificate.' 18 R. C. L., 262. See, also, *Thompson v. Holt,* 52 Ala., 491, 31 L. R. A., 351, annotations; *State ex rel. Atherton v. Sherwood,* 15 Minn., 221 (Gil., 172), 2 Am. Rep., 116; *State ex rel. Love v. Smith,* 43 Okl., 231, 142 P., 408, L. R. A., 1915-A, 832, and note."

While as hereinbefore stated this is not an action to try title, the respondent by his return has raised the question of title, thus asking that it be passed upon; and petitioner expresses his willingness for the Court to pass upon the title to the office.

Ordinarily this Court will decide only necessary issues, but it would appear that the issue of title to the office under discussion will arise "sooner or later," and for this reason only does the Court pass thereon.

At the time (February, 1933) of the passage of the Act creating the office of comptroller of Oconee County, the legislative delegation consisted of the senator and two House members, and of course there has been no increase in the delegation. But for the punctuation, the comma following the word "senator," there could be no escape from the conclusion that the phrase "or a major fraction of them" has reference to the entire legislative delegation, and not merely to the House members; and the addition of a comma after the word "representatives" would force the same conclusion. Of course there cannot be a major fraction of two people. If it was intended that both members of the House of Representatives, along with the senator, must recommend before an appointment can be made, then it would have been a simple matter to have so worded the section of the Act dealing with the manner of appointment. If we should

construe this section of the Act as contended for by respondent, then so long as any one member of the House refused to agree on an appointee, the incumbent would hold the office, and the senator and other members of the House would be impotent to make any change, which would be wholly contrary to the great democratic principle of rule by majority.

Of course words may be regarded as surplusage under some circumstances, but generally speaking they should be given effect if possible. We cannot resist the conclusion that to read them out here would have the effect of defeating the legislative intention.

As aforestated, when the Act was passed it was known to the Legislature that there were only two members of the House, so there could not be a major fraction of the House delegation. Then obviously the major fraction would relate to the entire delegation.

There is a great wealth of authority to the effect that punctuation is not a part of a statute, and may be disregarded in order to effect the intention of the Legislature. These authorities are cited in 59 C. J., 989–991, and need not here be set out.

In *Barrett v. Van Pelt,* 268 U. S., 85, 54 S. Ct., 437, 69 L. Ed., 857, 861, there is quoted with approval from the case of *Chicago, M. & St. P. R. Co. v. Voelker,* 8 Cir., 129 F., 522, 527, 65 C. C. A., 226, 70 L. R. A., 264, the following:

"Punctuation is a minor, and not a controlling, element in interpretation, and Courts will disregard the punctuation of a statute, or repunctuate it, if need be, to give effect to what otherwise appears to be its purpose and true meaning."

To the same effect was the holding in almost identical language in *Hammock v. Farmers' Loan & Trust Co.,* 105 U. S., 77, 26 L. Ed., 1111.

So far as we have been able to discover, there is no case heretofore decided by this Court directly in point, but *Stackhouse v. County Board of Com'rs,* 86 S. C., 419, 68 S. E., 561, is analogous in principle, the first sentence of the syllabus reading as follows:

"However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intent, and if possible will construe the statute so as to escape the absurdity and carry the intention into effect."

For the reasons herein stated, it is ordered that respondent surrender to petitioner the possession and custody of the office of comptroller for Oconee County and all the books, papers, documents, moneys and things in his possession and belonging to said office.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER, FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.