15336

SMITH v. CITY COUNCIL OF CHARLESTON

(17 S. E. (2d), 860)

*Mr. J. Waties* and *Mr. William C. Ehrhardt,* both of Charleston, for appellant,

*Messrs. Barnwell & Whaley,* of Charleston, for respondent,

December 2, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

The basis of this action is a claim for salary alleged to be due respondent by appellant. Respondent had been the treasurer of the City of Charleston continuously since October 14, 1919, to the date of this controversy. As a result of certain matters arising in connection with the conduct of the office and alleged shortages, the respondent applied for and obtained leave of absence from the details of the office in order to devote his entire time to the investigation of and assist in the checking of an audit report made for the School Board of School District No. 20 of Charleston County, which had been referred by it to Charleston County grand jury and in which there were charges of a shortage concerning the handling of the school funds in the office of the treasurer of the City of Charleston. In granting the leave of absence, an apparent shortage in the city's fund was called to respondent's attention. Upon the granting of the leave of absence to respondent, R. G. White, the comptroller of the City of Charleston was appointed acting treasurer of said city.

Paragraph 4 of respondent's complaint reads: "That the investigation of the said Audit Report continued into January, 1935, during which month, to-wit on the second Tuesday in January, 1935, The City Ordinance of the City of Charleston provided for the election of a City Treasurer for the ensuing year. That your petitioner duly submitted his application for re-election as City Treasurer, being the only applicant for the said office, and said application was duly presented to and considered by the said The City Council of Charleston at its regular meeting held on the second Tuesday in January, 1935, when the matter of electing a City Treasurer came up in due course. That the said The City Council of Charleston decided to hold no election of a City Treasurer at that time but unanimously resolved to extend the leave of absence theretofore granted to your petitioner by the

Mayor of the City of Charleston as aforesaid in order that he might continue his investigation and checking up of the said Audit Report. That the said extension of petitioner's leave of absence as City Treasurer was continued without interruption and the election of a new City Treasurer was deferred until September 16, 1935; so that Plaintiff was continuously the duly elected and qualified Treasurer of the City of Charleston during the period from December 15, 1934, to September 16, 1935, and entitled to receive the salary and emoluments of said office."

Paragraph 4 of appellant's answer is as follows: "Answering Article IV of the said complaint this defendant admits on information that he, plaintiff, continued to make investigations of the reports as to his conduct as City Treasurer but alleges that all of the same were done in his own behalf and not for or on behalf of the defendant. And defendant further admits that the plaintiff applied for re-election as City Treasurer on the second Tuesday in January, 1935, but alleges that such application was not granted and no City Treasurer was elected, and R. G. White was continued as Acting City Treasurer. And this defendant further alleges that the said plaintiff was allowed to continue on leave of absence so as to devote himself to his own purposes in endeavoring to clear up all shortages and discrepancies in his accounts, and during said period he was not engaged in performing any duties as city treasurer and rendered no service and did no work for Defendant. And this defendant further admits that on September 16, 1935, an election was held for a city treasurer and R. G. White was duly elected. And this defendant denies the other allegations in the said Article contained."

And for a further and affirmative defense, the appellant alleged: "That on or about January 9, 1934, the plaintiff, Whitmarsh S. Smith, was elected city treasurer to serve for a period of one year only. That as city treasurer the said plaintiff was charged with the custody and safe keeping of the funds, accounts and records of the City Council of

Charleston and also acted as treasurer for and was charged with the custody and safe keeping of the funds, accounts and records of School District No. 20 of Charleston County. That thereafter as a result of various audits made of the office of the city treasurer there were found to be large discrepancies in the funds, accounts and records in the hands of and under the control of the said plaintiff, both in the city and in the school funds. That investigations were made by the City Council of Charleston and by the Grand Jury of Charleston County which resulted in the employment of auditors for the purpose of checking and investigating the said accounts. That these audits and reports showed that the said plaintiff, as city treasurer of the City of Charleston, and as such, being the custodian both of the city and school funds, had grossly mismanaged and mishandled the records, accounts, books and funds under his control, and in his custody, and that he had been so grossly negligent and careless in the conduct of his office that large sums of money had been lost to one or both of the institutions whose funds he was handling. That thereupon and as a result of the state of confusion, uncertainty and shortages in the funds in his said office the said plaintiff applied for and obtained a leave of absence for the alleged purpose of endeavoring to ascertain the reason and cause of this confusion and to endeavor to locate and make good the shortages and discrepancies. That the said leave of absence was granted by the City Council of Charleston, and thereafter the said plaintiff performed no services of any character whatsoever for this defendant but was engaged entirely on his own account in endeavoring to ascertain facts to explain or satisfy the losses and shortages caused by his own mismanagement and negligence. That the said plaintiff wholly failed ever to explain or account for or make good the shortage, and thereafter suit was brought by the aforesaid School District against the plaintiff and Fidelity and Deposit Company of Maryland which was surety on the bond of the said Whitmarsh S. Smith; and the said surety as the result of the said suit was

forced to pay over large sums of money to the said School District and to the City Council of Charleston as a compromise and in part payment of the shortages caused by the said plaintiff. This defendant is further informed that the balance of the shortages created by the plaintiff as aforesaid and not paid by the Surety Company have never been made good by the plaintiff."

The respondent demurred to the affirmative defense set up in the answer of appellant on the ground that it did not state facts sufficient to constitute a counterclaim or defense to the cause of action set forth in the complaint. By order of Honorable Douglas McKay, Special Judge, this demurrer was sustained; and this order being unappealed from, became "the law of the case."

Upon a trial of the case, the respondent introduced in evidence as his Exhibit 5, a consent decree out of the Court of Common Pleas for Charleston County, signed by Honorable Wm. H. Grimball, resident Judge, in an action by *School District No. 20 of Charleston County, as plaintiff vs. W. S. Smith (respondent), Fidelity and Deposit Company of Maryland, and the City Council of Charleston (appellant), as defendants*, in which:

"It is ordered, adjudged, and decreed that the defendant W. S. Smith has fully accounted to the plaintiffs and to the City Council of Charleston for all funds of the City Board of Public School Commissioners for the City of Charleston, and of the City Council of Charleston of which he has been custodian involved in this suit, and has fully accounted to his co-defendant Fidelity and Deposit Company of Maryland for all liability to it upon all bonds executed by them upon which it was surety.

"It is further ordered, adjudged and decreed that all contractual liability arising out of any and all bonds of the defendant W. S. Smith and the defendant Fidelity and Deposit Company of Maryland, because of any breach or breaches of the condition or conditions of any and all of said bonds executed by the said W. S. Smith and the said

Fidelity and Deposit Company of Maryland to the City Council of Charleston and/or the Board of Public School Commissioners for the City of Charleston, sometimes known as Commissioners of Public Schools of the City of Charleston, S. C., is terminated.

"It is further ordered, adjudged and decreed that this cause be discontinued and marked settled and ended and that all claims and demands set forth in the pleadings herein be deemed *res adjudicata,* as to all parties herein.

"Provided, that nothing in said settlement or in this decree shall be construed as charging the defendant W. S. Smith, with any criminal conduct or liability in connection with the matters involved in this suit."

At the conclusion of respondent's testimony, appellant moved for a nonsuit, and this motion being refused, the appellant introduced certain ordinances of the City of Charleston and the entire record in the case of *School District No. 20 v. W. S. Smith (respondent) et al.*

The appellant having closed its defense, the respondent moved for a directed verdict for the amount sued for, that is, the proportionate annual salary of the city treasurer from December 15, 1934, to September 16, 1935, which motion was granted. Let the grounds of this motion be reported along with this opinion.

The exceptions of the appellant allege error in the refusal of the motion for nonsuit, and in granting the motion of respondent for a directed verdict. There has been no attempt to comply with Rule 8 of this Court as to the statement of "Questions Involved" in the preparation of appellant's brief. We mention this for the reason that the respondent has indirectly called upon the Court to invoke this rule.

The respondent states the "Questions Involved" to be: (1) "Did plaintiff hold office of city treasurer of the City of Charleston from December 15, 1934, to September 16, 1935?" and (2) "Is plaintiff entitled to receive the salary

of city treasurer from December 15, 1934, to September 15, 1935?"

Section 4(a) of the Ordinances of the City of Charleston fixes the date for the election of officers on the second Tuesday in January or the first meeting of Council thereafter, "except as herein otherwise provided." Section 4(c) provides for the filling of vacancies either by death, resignation or removal; and Section 7(b) provides that "Each and every City officer, elected by the City Council of Charleston, shall be subject at any time, to be removed from office by council, for such causes as to them shall seem sufficient, after a full hearing of the case."

There is no question but that respondent was the city treasurer until the second Tuesday in January, 1935. Appellant failed to elect a treasurer in January, 1935, extended the leave of absence of respondent and continued Mr. White, the city comptroller as acting treasurer until September 16, 1935, when he was elected the treasurer.

The general law is that one who holds over after the expiration of his legal term, where no provision is made by law for his holding over, and there is nothing to indicate to the contrary, is commonly regarded as a *de facto* officer. *Heyward v. Long,* 178 S. C., 351, 365, 183 S. E., 145, 151, 114 A. L. R., 1130, and the authorities therein cited. This is so although the term of the office is definitely fixed by statute. Of course, upon the office being filled either by appointment or election, as may be provided by the statute for the filling of the office, and the qualification of the appointee or electee, the *de facto* status terminates.

A *de facto* officer is: "One who has the reputation of being the officer he assumes to be although he is not such in point of law." A more accurate definition is: "One who is in possession of an office, in good faith, entered by right, claiming to be entitled thereto, and discharging its duties under color of authority." "It is color of authority, not color of title, which distinguishes an officer *de facto* from a usurper." *Heyward v. Long, supra.*

It is true that in the instant case, the respondent was not performing the usual duties of the city treasurer, but he was not doing so by reason of a leave of absence granted him, and all of the testimony on the issue if he was to be paid his salary while on this leave of absence is to the effect that respondent's "salary had not been touched, that he had not been fired, he had not resigned, and that when the matter was straightened out he would receive his salary." While it is admitted that respondent has paid no portion of the money paid to School District No. 20 and to the City of Charleston by Fidelity and Deposit Company of Maryland, yet in the decree taken in the case of said School District against respondent, the bonding company and appellant, it was adjudged and decreed that W. S. Smith (respondent) has fully accounted to the City Council of Charleston (appellant herein) and to the plaintiff in that case for all funds of which he had been the custodian, and appellant herein, by its counsel, consented to this decree.

Further than this, the order of Honorable Douglas McKay, Special Judge, sustaining the demurrer to the affirmative defense of appellant is in part as follows:

"It appears to the Court that the only real issue in this cause is, what was the status of the plaintiff after the leave of absence which he asked for was granted by the City Council? There is no allegation in the special defense that he was ever afforded a hearing by the City Council and dismissed, nor is there a statement, save a general one, that any properly constituted body decided and determined that a shortage existed for which he was responsible. It appears to be the law that a duly elected officer cannot be deprived of his office or salary without a hearing. S. C. Constitution, Article 3, Section 27; Ordinances of City of Charleston, Section 7, subdivision (b) ; *McDowell v. Burnett*, 92 S. C., 469-485, 75 S. E., 873. And it further appears to be the law that nonperformance of the duties of an office in itself is insufficient to deprive a duly elected officer of the emolu-

ments of his office, 43 C. J., 6877; *Goree v. Greenwood County Supervisor*, 93 S. C., 312, 76 S. E., 705.

"The written request for leave of absence and the action of the City Council of Charleston in regard thereto, or the record of what transpired at its meetings when this request was under consideration, are not before the Court, but nowhere does there appear to be the contention that this request for leave of absence was in effect a resignation."

As hereinbefore stated, there was no appeal from this order, and whether right or wrong, it became "the law of the case."

All exceptions of the appellant are overruled.

There is a second appeal in this case from the taxation of costs.

In the taxation of respondent's costs in the Circuit Court, he was allowed the statutory fees for two witnesses, two days each, who had not been subpoenaed, but voluntarily appeared and testified. Appellant's position is that no witness fees can be taxed against an adverse party unless it be shown that the said witnesses were duly summoned or subpoenaed, and in support of this position cites *Atherton v. Atlantic Coast Line R. Co.*, 82 S. C., 474, 64 S. E., 411.

The *Atherton case* was decided in 1909. In 1913 by an Act, the title of which reads, "An Act to Amend Section 4240 of Volume I of the Code of Laws of South Carolina, 1912, Relating to the Taxation of the Costs of Witnesses in Civil Cases and Special Proceedings," said Section 4240 of the Code of 1912, (Section 3130, Code of 1902; Section 4963, Code of 1932) was amended so as to include witnesses "on request when actually appearing as a material witness." Volume XXVIII, Stat. at L., p. 74.

In making of this amendment, the intent of the legislature is unmistakable.

Section 4963 fixes the amount of fees, etc., to which witnesses are entitled for the purpose of taxation of costs against the losing party, and defines and limits

the witnesses for which costs can be taxed. Section 686 of the Code fixes the amount of fees, etc., to which witnesses who have been compelled by subpoena to attend a trial, are entitled to receive from the person or persons at whose suit the summons issued. Thus, a witness who has been subpoenaed is protected against the loss of his time and travelling expense, and can at the time he is subpoenaed, demand as a prerequisite to his attending a trial or hearing, the payment of his witness fees and mileage in advance.

The exception to the order following the taxation of costs for these two voluntary witnesses is overruled.

Affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER concur.

Plaintiff's motion for a directed verdict requested to be reported, follows:

Plaintiff moves for a directed verdict in his favor for the amount sued for on the following grounds:

1. The evidence establishes that the plaintiff, W. S. Smith, was the duly elected treasurer of the City of Charleston and never resigned, nor was any successor elected until September 16, 1935; that no charges have ever been formally preferred against him, nor was he granted a hearing on any charges; that the election of a successor was legally postponed and at the same time plaintiff was formally granted a leave of absence and that no successor was elected until September 16, 1935.

2. The emoluments or salary of city treasurer is an incident of the office and whether or not the plaintiff W. S. Smith performed the duties of his office during the term of his office is immaterial and irrelevant.

3. For the same reasons whether or not the plaintiff, W. S. Smith, was negligent in the performance of his official duties is immaterial and irrelevant.

4. Under the charter of the City of Charleston, its City Council had the power and authority to extend the term of

office of the city treasurer and to grant him a continuing leave of absence. Accordingly, under the action taken by City Council at the meeting held on the date set for the election of city treasurer whereby on receipt of the application of plaintiff for re-election, it by unanimous vote adopted a resolution not to hold an election and to grant the plaintiff, W. S. Smith, a further leave of absence, the plaintiff continued to hold the office of city treasurer until his successor was elected on September 16, 1935, and is entitled to receive the emoluments or salary of said office during this period.

5. Under the action taken by City Council at its meeting on January 8, 1935, whereby it merely designated the city comptroller to perform the duties of the office of city treasurer during the leave of absence granted plaintiff, W. S. Smith, the City Council is estopped from claiming that the plaintiff, W. S. Smith, did not continue to hold the office of city treasurer until his successor was elected on September 16, 1935.

6. Inasmuch as the plaintiff, W. S. Smith, continued to be the city treasurer with the acquiescence and permission of City Council and as there is no other person claiming or having the right to claim this office until the election of a successor on September 16, 1935, he was as a matter of law the legal incumbent until the successor was elected and entitled to the emoluments or salary of this office.

7. A leave of absence does not deprive a public officer of the right to be paid the emoluments or salary of his office, in the absence of any such limitation, and the grounds for the leave of absence, its length or whether the officer performed his duties while on leave, are all immaterial to the question of the right of the officer to the emoluments or salary. Accordingly, in the present case the City Council, having granted the plaintiff a leave of absence in December without any limitation on his right to his salary, and having extended it until his successor was elected on September 16, 1935, cannot now refuse to pay the salary for this period on any such grounds.

8. Under the Constitution and under the ordinances of the City of Charleston a public officer cannot be deprived of his salary without a hearing, and as it appears that no charges were ever preferred against the plaintiff, W. S. Smith, nor hearing had, he is entitled to receive the salary of city treasurer during the period from December 10, 1934, to September 16, 1935, when he was both *de facto* and *de jure* city treasurer, amounting to $2,250.00, with interest from September 16, 1935.

9. Even though City Council did not at its meeting on January 8, 1935, formally extend the term of office of city treasurer, its action in voting not to elect a successor to the plaintiff as city treasurer, and at the same time to continue plaintiff's leave of absence, made him *de facto* city treasurer until his successor was elected and entitled him to the emoluments of the office during this period.