### 16610

BRADFORD *ET AL.* v. BYRNES, GOVERNOR
MALONEY *ET AL.* v. BYRNES, GOVERNOR

(70 S. E. (2d) 228)

*Messrs. Raymond H. Tyler,* of York, *Wilson & Wilson,* of Rock Hill, *and J. Means McFadden,* of Chester, *for Appellants,* cite:

*Messrs. T. C. Callison, Attorney General, James S. Verner, Assistant Attorney General,* of Columbia, *for Respondent, James F. Byrnes, Governor, R. B. Hildebrand and James D. Grist, Jr.,* of York, *and W. C. McDow,* of Rock Hill, *for Respondent, W. Lewis Wallace, and Roddy & Ward,* of Rock Hill, *for Respondent, Dan S. Hollis,* cite:

April 1, 1952.

STUKES, Justice.

The appeals in the above stated cases were briefed by counsel and orally argued together and will be disposed of in a single opinion. The first captioned was conveniently called by counsel in argument, "the Richland case," and the second, "the York case." Both involve controversies which arise out of the interpretation and application of the York County Government Act of June 30, 1950, No. 962, 46 Stat. 2316. It was here before, in the original jurisdiction of the court, and the decision is reported under the title of *Glasscock v. Bradford,* 218 S. C. 458, 63 S. E. (2d) 166, to which reference should be had, and also to the published act. The terms of the latter will not now be needlessly repeated. It substituted a five-member County Board of Di-

rectors for the former nine-member Board of County Commissioners.

### The Richland Case

The subject action, which is the first stated above, was brought by three members of the State House of Representatives from York County against His Excellency, The Governor of the State, to require appointment by him as members of the county Board of Directors of five citizens, all apparently incumbent county commissioners, whom they recommended for the new appointments. There are four House members from York County so the plaintiffs are a numerical majority of the members of the General Assembly from York County, including the Senator, which are, in the aggregate, the "Legislative Delegation" or "Delegation" from York County. *Bruner v. Smith,* 188 S. C. 75, 198 S. E. 184. The issues made by the pleadings were: (1), whether under the terms of the Act of 1950 the plaintiffs, as the majority of the whole legislative delegation, are entitled to make an effective recommendation without participation of the Senator; (2), are the offices in question vacant? And (3), can the Governor appoint under the general laws, without recommendations? The court held that the majority of the legislative delegation which was contemplated by the act must include the Senator (in the absence of nominations in the primary—see sec. 2(3) of the act), citing *Bruner v. Smith, supra,* and *Jennings v. Green,* 219 S. C. 471, 65 S. E. (2d) 878, as supporting authorities *sub silentio*; and went on to hold that the offices of county director are vacant in the sense that the Governor is authorized to fill them by appointment without recommendation, under the terms of the general statutes which constitute sections 2351 and 3094 of the Code of 1942. Thus all issues were decided adversely to the plaintiffs, who appealed.

The decision will be affirmed on all points. Appointment of the directors (when there are no nominations by primary) shall be made by the Governor.

upon the recommendation, quoting from the proviso to section 2(3) of the act, "by a majority of the legislative delegation from York County, including the Senator." The proviso speaks clearly for itself. A contrary conclusion would necessitate the ignoring of the last phrase, which is, "including the Senator." Unless it means that he shall be included in the required majority, it is without meaning; and it cannot be disregarded in arriving at the legislative intent. Citation of authority is unnecessary to say that all of the provisions of a statute must be given force and effect, if consistent. "The legislative delegation", included the Senator (perforce the very term, and the authority of *Bruner v. Smith, supra*) so use of the express including phrase was unnecessary and surplusage, unless it is given the indicated meaning, that is, that the result of the wording was to require the Senator to be included in an effective majority of the delegation for the purpose of recommending appointees to the County Board of Directors, if none be nominated by primary, as here. No legal authority in conflict with this conclusion was cited. Instead, a rule of grammar was argued, which cannot be observed in construction when to do so would thwart the manifest purpose of the provision.

■ The plan is not inconsistent with our constitutional scheme of government by "checks and balances." Each house of the legislative branch is a "check" on the other in the enactment of legislation. So under the subject statute the Senator cannot make a legal recommendation alone; nor can the representatives, or a majority of them.

■■ Proceeding to the second question, the offices are vacant in the meaning that they may be filled by *de jure* appointees. Almost two years have elapsed since passage of the Act of 1950 and a majority, including the Senator, of the legislative delegation, have failed to agree upon, and make, recommendations for the appointments. Meanwhile, the former commissioners have continued in office and exercised the powers and discharged the duties which were provided for the Board of Directors under

the Act of 1950. By the proviso to Section 3 of the act this was expressly authorized and directed to continue until January 15, 1951; and since that date the commissioners have continued in office *de facto*. The incumbency of a *de facto* officer does not prevent or necessarily postpone the appointment and qualification, according to law, of a *de jure* successor. 67 C. J. S., Officers, § 141, p. 444, from which the following is taken: "One who holds over after the expiration of his legal term, where no provision is made by law for his holding over, is generally regarded as a *de facto* officer, but on the office being filled either by appointment or election, as may be provided by statute for the filling of the office, and the qualification of the appointee or electee, the *de facto* status terminates."

Not involved in this case is the effect of a constitutional or statutory provision that an officer shall hold office for a fixed term and until his successor is appointed or elected, and qualifies. See *State ex rel. Lyon v. Bowden*, 92 S. C. 393, 75 S. E. 866, and annotation, 164 A. L. R. 1248. Cf. *Heyward v. Long*, 178 S. C. 351, 183 S. E. 145, 114 A. L. R. 1130, which involved State officers. There is no contention here that the commissioners are *de jure* officers; only that they are *de facto*. The Act of 1950 superseded the former law affecting the government of York County and with it went the *de jure* status of the commissioners—after Jan. 15, 1951, per the express provision of the new law. The purpose of the doctrine of *de facto* officers is the continuity of governmental service and the protection of the public in dealing with such officers, not to protect them from displacement by *de jure* successors. 43 Am. Jur. 224, 225, Public Officers, sec. 470.

Appellants cite and rely upon decisions which held that, under the circumstances of those cases, offices were not in fact vacant because they were occupied by *de facto* incumbents, but none held that a *de facto* incumbent could not be succeeded by a *de jure* successor who should be appointed or elected according to the applicable law. On the contrary,

it was said in *Smith v. City Council*, 198 S. C. 313, 320, 17 S. E. (2d) 860, 863: "Of course, upon the office being filled either by appointment or election, as may be provided by the statute for the filling of the office, and the qualification of the appointee or electee, the *de facto* status terminates." This was quoted with approval in the closely following *Gaskin v. Jones*, 198 S. C. 508, 18 S. E. (2d) 454. In our latest decision which touches the point, *Langford v. State Board of Fisheries*, 217 S. C. 118, 129, 60 S. E. (2d) 59, 64, we said: "It follows therefore that while the plaintiff was a *de facto* officer only, and hence immediately upon the appointment and qualification of his successor would have had no right to hold his office any longer, * * *."

The cited cases are authority for the postulate that in the absence of pertinent statutory or constitutional provision, public offices hold over *de facto* until their successors are appointed or elected and qualify. Vacancy, nevertheless, exists in the sense that successors may be appointed or elected as may be provided by law, qualify and take the offices; but meanwhile the "holdovers" are entitled to retain the offices. As nature abhors a void, the law of government does not ordinarily countenance an *interregnum*. The latter term is defined by Bouvier (Rawle's third revision, Vol. I, p. 1665) as the vacancy which occurs when there is no government, derived from the status resulting from the death of a sovereign. There is in fact here no lapse in the government of York County. The old commissioners have continued to discharge the duties of directors under the Act of 1950 during the long period of delay in the replacement of them.

It is seen that the word "vacant" as applied to public offices has no fixed meaning in the law, which is generally recognized by the decisions and textwriters, 67 C. J. S., Officers, § 50, p. 206. The following are excerpts from 42 Am. Jur. 976, 977, 978, Public Officers, secs. 131, 133: "The word 'vacancy' as applied to a public office, has no technical meaning, and it is not to be taken in a strict tech-

nical sense in every case * * *. A vacancy in office may exist where there is a newly created office * * *. As observed above, the word 'vacancy' when applied to public offices is not employed in a technical sense. It does not mean that the office is necessarily physically vacant. It may be vacant when it is occupied by one who is not a *de jure* officer, as by a mere usurper, or by one who is holding over. But although no corporal vacancy in the office exists in such a case, nevertheless there is a vacancy in the sense that the appointing or electing power may proceed to fill the office by choosing a successor * * *."

Section 134 of the cited text is quoted in full, as follows: "A vacancy may arise in an office newly created. The general rule governing the matter seems to be that when a law establishing an office takes effect a vacancy in the office at once exists, unless the language of the law imports futurity of selection, or unless other restrictions are imposed. Hence the term 'vacancy' applies to an existing office without an incumbent, although it has never been filled; for example, when a new county is created, the county offices, before they are filled, are considered as being technically vacant."

Numerous supporting decisions from other jurisdictions are cited in the footnotes to the foregoing texts; and others may be found in 43 Words and Phrases, 604 *et seq.*, which contains a collection of digests of decisions defining the term "vacancy" as applied to public offices, some quite analogous to the situation here presented.

In view of the reasons and authorities which have been cited, there can be no doubt that vacancies exist in the offices of York County Directors, which offices were created by the Act of 1950; and the occupancy thereof by the *de facto* officers (who are former commissioners) does not bar appointment of *de jure* successors.

The case of *Elledge v. Wharton,* 89 S. C. 113, 71 S. E. 657, should be distinguished or at least stated. There a statute provided that rural policemen of Greenwood county

should be appointed by the Governor upon the recommendation of the county legislative delegation. Immediately upon the passage and approval of the act the Governor appointed, upon the recommendation of one House member, without notice or opportunity to the other members of the delegation to participate in the recommendation. The appointees took office and discharged the duties in good faith; and the questions decided were only (1) the nature of their status and (2) whether they were entitled to compensation for the first two months of their tenure, which was involved in the litigation. The court held that the appointees were *de facto* officers and entitled to the statutory compensation, under the circumstances of that case.

The third point, which is also common to both cases, is, as stated above, whether the Governor may proceed to fill the offices pursuant to the powers vested in him by Sections 2351 and 3094 of the Code, and we agree with the trial courts that he may. These general statutes are as follows:

Section 2351: "In the event of a vacancy at any time in any of the offices of any county of the State, whether from death, resignation, disqualification, refusal or neglect to qualify of the person elected or appointed thereto, expiration of the term of office, removal from the county or from any other cause, the Governor shall have full power to appoint some suitable person, who shall be an elector of the county, and, upon duly qualifying according to law, shall be entitled to enter upon and hold the office to which he has been appointed if it be an elective office, until the next general election, when an election shall be held to fill the unexpired term, and the officer so appointed or elected shall hold said office for the term of said election or appointment, and until his successor shall qualify; and if it be an office which was filled originally by appointment, until the adjournment of the General Assembly at the regular session next after such appointment; and shall be subject to all

the duties and liabilities incident to said office during the term of his service therein."

Section 3094: "The following officers shall be appointed by the Governor:

. *     *     *     *     *     *     *     *

"Any vacancy in a county office, by reason of death, resignation, refusal, or neglect to qualify, of the person elected or appointed thereto, expiration of the term of office, or any other cause. The person so appointed to hold office, in all cases in which the office is elective, until the next general election and until his successor shall qualify; and in cases of offices which are originally filled by appointment and not by election, until the adjournment of the session of the General Assembly next after such vacancy has occurred. The Governor may remove for cause any person so appointed by him to fill such vacancy.   *   *.  *"

The facts of this case present no conflict between the terms of these statutes and the York Government Act of 1950. The situation is simply that vacancies under the terms of the latter have come about from the long-continued failure of a majority, including the Senator, of the York County Legislative Delegation to make recommendations pursuant to the terms of the Act. It is the same as if the electors of the county should have failed to elect an elective official, in which case the general law, embodied in the cited statutes, has provided for the filling of the office. The failure of the Senator and enough of the Representatives from York County, who together would constitute a majority of the legislative delegation, to function in accord with the terms of the Act of 1950 has created vacancies in the offices of County Director as effectively as any other means may have done, and has given rise to the power of the Governor to appoint under the general laws which have been cited. As said, there is no present conflict in the statutes, and hence no apparent conflict to harmonize, which latter would be the duty of the court to try, if it were required. S. C. cases in 30 S. E. Dig., Statutes, Key No. 225, p. 866 *et seq.,* and supp.

## The York Case

This action, the second stated in the above caption was brought by five members, who are a majority, of the former governing board of the county. There were nine members of that board as constituted by law at the time of the passage of the successor Act of 1950. One has since died and another has been appointed and has qualified for another office, which all litigants agree vacated his place. Thus there survive seven members of the former board, five of whom are plaintiffs, as stated, and are now appellants. The defendants are the Governor, the Senator from York County and the House member who did not join his three colleagues in recommending appointees or in instituting the *Richland case*. The object of the action was, in substance, to enjoin appointments by the Governor under the general laws. The complaint was dismissed and appeal followed.

The questions involved in this appeal have been decided adversely to the appellants in the foregoing consideration of the appeal in the *Richland case,* and the ground need not be gone over again.

## Conclusion

It follows from what has been said that the exceptions to the circuit court decrees in both cases should be overruled, and they are.

The judgments under appeal are affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.